[No. 83795-3.   En Banc.]
Argued November 9, 2010.    Decided February 23, 2012.

SNOHOMISH COUNTY PUBLIC TRANSPORTATION BENEFIT AREA
CORPORATION, *Petitioner*, v. FIRSTGROUP AMERICA, INC.,
*Respondent.*

*Joseph P. Bennett* and *Matthew R. Hendricks* (of *Hendricks-Bennett PLLC*), for petitioner.

*John W. Rankin Jr.* and *Pamela A. Okano* (of *Reed McClure*), for respondent.

¶1 MADSEN, C.J. — We are asked to determine whether the parties' indemnity agreement clearly and unequivocally indemnifies the Snohomish County Public Transportation Benefit Area Corporation, doing business as Community Transit (Community Transit), for losses resulting from its own negligence. We conclude that the language of the agreement, and in particular language providing that in-

demnity would not be triggered if losses resulted from the sole negligence of Community Transit, clearly and unequivocally evidences the parties' intent that the indemnitor, FirstGroup America Inc., doing business as First Transit (First Transit), indemnify Community Transit for losses that resulted from Community Transit's own, but less than sole, negligence. We thus join the majority of courts deciding this issue.

¶2 We reverse the Court of Appeals' decision to the contrary and remand this matter to the trial court for further proceedings.

## FACTS

¶3 In 2002, Community Transit entered into a service contract with Coach USA Transit to provide commuter bus service for Community Transit. The contract incorporated an indemnity provision stating:

> "The Contractor shall defend, indemnify and save harmless Community Transit . . . from *any and every claim and risk*, including, but not limited to, suits or proceedings for bodily injuries . . . , and *all losses*, damages, demands, suits, judgments and attorney fees, and other expenses of any kind, on account of all personal bodily injuries . . . , property damages of any kind, . . . *in connection with the work performed under this contract*, or caused or occasioned in whole or in part by reason of the presence of the Contractor or its subcontractors, or their property, employees or agents, upon or in proximity to the property of Community Transit, . . . *except only for those losses resulting solely from the negligence of Community Transit, its officers, employees and agents.*"

Clerk's Papers (CP) at 14, 152 (emphasis added) (quoting Request for Proposal # 19-01 § 3.54 (Sept. 13, 2001)). Coach USA Transit later assigned its interests, rights, obligations, and duties under the contract to First Transit.

¶4 Pursuant to the parties' contract, First Transit provided commuter services between Snohomish County and

parts of King County. On February 24, 2004, during afternoon rush hour, a multiple vehicle accident occurred on Interstate 5 when a driver of a Toyota Corolla braked quickly and the driver of the second car behind it, a Honda Accord, was unable to stop in time and struck the car immediately behind the Corolla, pushing the Corolla into the oncoming high occupancy vehicle lane where it was struck by a First Transit bus. A Community Transit bus traveling immediately behind the First Transit bus then rear-ended the First Transit bus.

¶5 Community Transit tendered 42 claims for damages resulting from the accident to First Transit, which refused to defend, indemnify, or hold Community Transit harmless from the claims. Community Transit settled the claims and sued First Transit for indemnification.

¶6 Both parties moved for summary judgment. The parties stipulated to facts for purposes of their cross motions for summary judgment, including the facts above. In addition, the parties stipulated that the accident was caused by the shared negligence of the driver of the Honda Accord and the driver of the Community Transit bus, and Community Transit is responsible for the negligence of its driver under respondeat superior, that neither First Transit nor the driver of the First Transit bus was negligent, and that the accident did not result from the sole negligence of Community Transit. The trial court granted summary judgment in favor of First Transit. In an unpublished opinion, the Court of Appeals affirmed summary judgment. *Snohomish County Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc.*, noted at 152 Wn. App. 1021, 2009 WL 3018749, 2009 Wash. App. LEXIS 2423, *review granted*, 168 Wn.2d 1011 (2010). We granted First Transit's petition for discretionary review and now reverse.

## ANALYSIS

¶7 The central issue in this case is whether the indemnity agreement between Community Transit and First

Transit clearly and unequivocally shows the parties' intent that First Transit would be required to indemnify Community Transit for losses resulting from Community Transit's own negligence. Although we have not previously encountered the specific language of the present contract, we have established the governing principles.

¶8 This matter is here following grant of summary judgment. There are no material disputed facts, and accordingly the propriety of the summary judgment is a question of law that we review de novo. Further, where facts are undisputed and there is no extrinsic evidence presented on the issue, the meaning of a contract may be decided as a matter of law. *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn.2d 411, 424, 191 P.3d 866 (2008); *see also Tanner Elec. Coop. v. Puget Sound Power & Light*, 128 Wn.2d 656, 674, 911 P.2d 1301 (1996).

¶9 A party may contractually indemnify against loss that results from the party's own negligence unless prohibited from doing so by statute or public policy. *Nw. Airlines v. Hughes Air Corp.*, 104 Wn.2d 152, 155, 702 P.2d 1192 (1985). This is a specific application of the general rule that "[u]nder the principle of freedom to contract, parties are free to enter into, and courts are generally willing to enforce, contracts that do not contravene public policy." *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 176, 94 P.3d 945 (2004). "[T]he mere existence of an indemnification clause attempting to indemnify the indemnitee from its own negligence" has "never been found to be against public policy." *Nw. Airlines*, 104 Wn.2d at 156. Even when an agreement indemnifies against sole negligence, our "rules do not say that indemnification clauses are void as against public policy or that, as a matter of law, an indemnitor cannot be held responsible for an indemnitee's sole negligence." *Id.* at 158. Rather, the only time that public policy has barred indemnification of the indemnitee in this state is when the legislature has declared in specified circumstances that indemnification for the indemnitee's

sole negligence is against public policy, as it did in RCW 4.24.115, which does not apply in this case.[1]

¶10 Generally speaking, indemnity agreements to indemnify against claims and losses resulting from the indemnitee's own negligence are enforceable contracts, and we have "long preferred to enforce indemnity agreements as executed by the parties." *McDowell v. Austin Co.*, 105 Wn.2d 48, 53-54, 710 P.2d 192 (1985).

> " 'Contracts of indemnity . . . must receive a reasonable construction so as to carry out, rather than defeat, the purpose for which they were executed. To this end they should neither, on the one hand, be so narrowly or technically interpreted as to frustrate their obvious design, nor, on the other hand, so loosely or inartificially as to relieve the obligor from a liability within the scope or spirit of their terms.' "

*Id.* (quoting *Union Pac. R.R. v. Ross Transfer Co.*, 64 Wn.2d 486, 488, 392 P.2d 450 (1964) (quoting 27 Am. Jur. *Indemnity* § 13, at 462 (1940))). In short, indemnification agreements are to be interpreted in the same way as other contracts. *Jones v. Strom Constr. Co.*, 84 Wn.2d 518, 520, 527 P.2d 1115 (1974). For example, when we held that an express contractual agreement to indemnify prevails over the " 'borrowed servant' " tort defense, we noted that any other result "would frustrate the reasonable expectations of the contracting parties and thus interfere with their freedom to contract." *Stocker v. Shell Oil Co.*, 105 Wn.2d 546, 549-50, 716 P.2d 306 (1986).

¶11 We have recognized that "[p]arties rely on indemnity agreements for allocating the responsibility to purchase insurance when a construction project is initiated" and it "is not for this court to frustrate such a planning device." *McDowell*, 105 Wn.2d at 54; *see also Riggle v. Allied Chem. Corp.*, 180 W. Va. 561, 568, 378 S.E.2d 282 (1989).

---

[1] " 'In general, a contract which is not prohibited by statute, condemned by judicial decision, or contrary to the public morals contravenes no principle of public policy.' " *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 481, 687 P.2d 1139 (1984) (quoting 17 C.J.S. *Contracts* § 211, at 1024 (1963)).

¶12 Nevertheless, we have also recognized that agreements that "purport to exculpate an indemnitee from liability for losses flowing solely from his own acts or omissions are not favored and are to be clearly drawn and strictly construed, with any doubts therein to be settled in favor of the indemnitor." *Jones*, 84 Wn.2d at 520. Accordingly, as do many other states, we apply the "general rule that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from his own negligence unless this intention is expressed in clear and unequivocal terms." *Nw. Airlines*, 104 Wn.2d at 154-55. The primary purpose of this strict standard is to assure that the parties truly intended to indemnify for the indemnitee's negligence.[2]

¶13 Under this standard, we will not find clear and unequivocal intent in broad and all-encompassing contract language that does not include specific language showing clear and unequivocal intent to indemnify the indemnitee's own negligence. *Nw. Airlines*, 104 Wn.2d at 155. But formulaic language expressly stating that "X indemnifies Y for Y's own negligence" is not mandatory either, and in cases where we have enforced agreements for indemnification in the event of the indemnitee's own negligence, such precise language was not present. What is required is language unques-

---

[2] We have previously observed that one jurisdiction has stated the purpose of the rule is to prevent injustice and make certain that a contracting party has fair notice that a large and ruinous award could be assessed because of negligence attributed to the other party. *McDowell*, 105 Wn.2d at 53 (citing *Joe Adams & Son v. McCann Constr. Co.*, 475 S.W.2d 721, 722 (Tex. 1971), *overruled by Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705 (Tex. 1987)). Although the dissent relies on this language as evidencing this court's "reluctance to find that parties intend to indemnify against losses caused by the indemnitee's negligence," dissent at 857, we made this observation about Texas law while summarizing a survey of approaches taken by other courts. These are important concerns for parties entering indemnity agreements, but they have not led us to declare such agreements to be in violation of public policy. As we have also noted, an indemnity agreement is often one tool among many employed to allocate risks between parties. *McDowell*, 105 Wn.2d at 54. What might appear to be a one-sided agreement, especially in the context of particular factual circumstances, may be only one aspect of a more complex business arrangement.

tionably showing the parties' intent to indemnify in the event of losses resulting from the indemnitee's negligence.

¶14 For example, in *Northwest Airlines* a commercial lease provided that a lessee was obligated to indemnify the lessor " 'from and against any and all claims, demands, causes of action, suits or judgments (including costs and expenses incurred in connection therewith) for deaths or injuries to persons or for loss of or damage to property arising out of or in connection with the use and occupancy of the premises by Lessee . . . whether or not caused by the Lessor's negligence.' " *Id.* at 153 (emphasis omitted) (quoting clerk's papers). We concluded that even under the stringent rule of construction that applies, this clause clearly included coverage for the indemnitee's negligence.

¶15 In so doing, we distinguished *Jones*, upon which the lessee relied. In *Jones*, a subcontractor agreed to indemnify a general contractor " 'against any and all suits, claims, actions, losses [etc.] arising out of, in connection with, or incident to the Subcontractor's performance of this SUB-CONTRACT.' " *Jones*, 84 Wn.2d at 521 (quoting agreement). An employee of the subcontractor was injured when flooring collapsed due to lack of shoring beneath it. The general contractor was solely responsible for the lack of shoring. We looked at the language of the clause and concluded that because it referred only to the subcontractor's performance of the contract and did not mention or refer to the general contractor's performance, it did not apply in the circumstances. *Id.* (on a " 'close[ ] reading and analysis' " the indemnity clause " 'ties the losses . . . to claims . . . "in connection with," . . . the [subcontractor's] performance of the subcontract' " and " 'makes no mention of or reference to [the contractor's] "performance" of the primary contract' "). We found it " 'clear that unless an overt act or omission on the part of [the subcontractor] in its performance of the subcontract in some way caused or concurred in causing the loss involved, indemnification would not arise.' " *Id.* at 521-22. Therefore, because " 'it was the [contractor's and not

the subcontractor's] performance or nonperformance of its contractual obligations which was the sole cause of the accident involved, [the subcontractor] would not be obligated under the indemnity clause.' " *Id.* at 522.

¶16 As we subsequently explained in *Northwest Airlines*, the indemnitor's overt act or omission was required before the obligation to indemnify was triggered because that is what the language of the contract required. "*Jones* held only that *the language of the indemnity clause* involved in that case could not be construed to require indemnification where the acts of the indemnitee were the sole cause of the injury." *Nw. Airlines*, 104 Wn.2d at 157 (emphasis added). We clarified in *Northwest Airlines* "that, for an indemnitor to be found responsible for the indemnitee's own negligence, the agreement must be clearly spelled out." *Id.* at 158. There was no language in the indemnity agreement in *Jones* that clearly spelled out any intent to indemnify in the event of the general contractor's negligence. The general contractor's conduct was never even addressed in the indemnity provision.

¶17 *McDowell* is another case where we determined that an indemnity agreement applied in the case of the indemnitee's own negligence. *McDowell* involved an indemnification provision in a construction contract between a general contractor and a subcontractor that indemnified the owner and the general contractor

> "against all liability for personal injury, including death resulting therefrom, sustained by any person directly or indirectly employed by Subcontractor or its subcontractors, caused or alleged to have been caused, directly or indirectly, by an act or omission, negligent or otherwise, by Owner or Austin [the general contractor] or persons directly or indirectly employed by them."

*McDowell*, 105 Wn.2d at 49-50 (emphasis omitted) (quoting agreement). We held that this indemnity clause indemnified the general contractor for its own concurrent negligence even though the clause did not mention "concurrent"

negligence. Policy considerations did not require that the "agreement be held unenforceable for failing to expressly mention concurrent negligence." *Id.* at 53.

¶18  Reaffirming *Northwest Airlines,* we noted that "general rules that disfavor an agreement to indemnify an indemnitee against its own negligence do not render such a clause void or unenforceable as a matter of law." *Id.* at 54. The rules require, we repeated, that the agreement must be clearly spelled out. *Id.* By expressly referring to the "act or omission" of the indemnitee, "negligent or otherwise," the indemnity agreement showed clearly and unequivocally the intent to indemnify in the event losses were the result of the indemnitee's own negligence.

■■ ¶19  First Transit maintains that the language of the indemnity agreement shows that Community Transit is not indemnified for its concurrent negligence. It begins with an examination of the language "in connection with work performed under this contract," arguing that under *Jones,* this requires that there be some overt act or omission by First Transit. But just as the lessee in *Northwest Airlines* misread *Jones,* so does Community Transit. As we emphasized in *Northwest Airlines,* the important question is whether the agreement clearly provides for indemnification when losses result from the indemnitee's negligence. The agreement must speak to the negligence of the indemnitee.

¶20  As mentioned, in *Jones* the requirement of an act or omission by the *indemnitor* (the subcontractor) existed because that is what the express language of the parties' agreement required. The agreement made no mention of the indemnitee's negligence whatsoever.

¶21  Here, in contrast, the agreement does not end with the "in connection with" language. Rather, it also expressly and specifically refers to losses resulting from the negligence of the indemnitee, first saying that indemnification is required for any and all claims and risks and all losses and then adding that no indemnification is required if the losses result from the indemnitee's sole negligence. It cannot be

said that the parties did not consider the possibility of losses resulting from the indemnitee's own negligence or the effect of such negligence. The language shows that the parties consciously and deliberately considered the question of indemnity in connection with the indemnitee's negligence and, having done so, decided to exclude *only* the indemnitee's *sole* negligence as a trigger. Like in *McDowell*, the agreement does not mention "concurrent" negligence, but like in *McDowell*, the absence of the word "concurrent" does not alter our holding. The express language of the indemnity agreement shows clear and unequivocal intent to indemnify for loss resulting from the negligence of the indemnitee, provided the loss does not result from the *sole* negligence of the indemnitee and this necessarily includes the indemnitee's concurrent negligence.

¶22 Indeed, if the indemnity agreement were not intended to provide for indemnification in the event of the indemnitee's negligence short of sole negligence, there would have been no reason to include the language at all. An interpretation of a contract that gives effect to all provisions is favored over an interpretation that renders a provision ineffective, and a court should not disregard language that the parties have used. *Wagner v. Wagner*, 95 Wn.2d 94, 101, 621 P.2d 1279 (1980). The exception proviso in the indemnity clause has meaning only in relation to negligence of the indemnitee and only if read, as obviously intended, to mean that Community Transit's negligence will trigger the obligation to indemnify but not if it is the sole negligence.

¶23 We conclude that the indemnity agreement provides for indemnification in the event of losses resulting from Community Transit's concurrent negligence. In relevant part, the contract says that First Transit will indemnify Community Transit " 'from any and every claim and risk . . . and all losses . . . in connection with the work performed under this contract . . . except only for those losses resulting solely from the negligence of Community Transit.' " CP at

14 (quoting Request for Proposal # 19-01 § 3.54 (Sept. 13, 2001)). First Transit was engaged in the performance of the work under the contract when the injuries occurred "in connection with" that performance. The parties have stipulated that Community Transit was negligent, but not solely negligent. Thus, under the terms of the indemnity agreement and the facts of this case, First Transit is obligated to indemnity Community Transit for the claims it paid that resulted from the multiple vehicle accident involving both First Transit and Community Transit buses.

¶24 Our decision in this case accords with the holding in *Cope v. J.K. Campbell & Associates*, 71 Wn.2d 453, 454, 429 P.2d 124 (1967). The indemnity agreement in *Cope* mentioned negligence only in the context of an exclusion for the sole negligence of the indemnitee. The agreement provided:

> "The Subcontractor shall be responsible and liable for, and shall save the Contractor and the Government harmless from *all suits, claims and demands of whatsoever kind or nature* arising out of or *in connection with the work to be performed* under this Subcontract; *provided*, that *this article shall not apply to suits, claims or demands solely due to the fault or negligence* of the Contractor or Government, or both . . . ."

*Cope*, 71 Wn.2d at 454 (emphasis added), quoted in *McDowell*, 105 Wn.2d at 53. The court held that the indemnity clause required indemnification for loss caused by the concurrent negligence of the indemnitee. Just as in the present indemnity clause, the only mention of the indemnitee's negligence was in the sole negligence exception. *Cope* was cited with approval in *McDowell* as a case in which an indemnity agreement was upheld as encompassing concurrent negligence without expressly referring to it, thus confirming *Cope*'s continuing precedential value on the matter of indemnity for the indemnitee's negligence.[3] *See also Stocker*, 105 Wn.2d at 547-51 (an express agree-

---

[3] The dissent criticizes our citation to *Cope*, 71 Wn.2d at 454, dissent at 858, but seems to ignore the fact that the case was cited with approval in *McDowell*. Contrary to the dissent's view that *Cope* has been eclipsed, *McDowell* is to the

ment to indemnify against "damage and injuries arising out of performance of the contract," but "exclud[ing] indemnification for [the indemnitee's] sole negligence" was "unquestionably enforceable" and would be given effect over the borrowed servant doctrine because to hold otherwise would "interfere with [the parties] freedom to contract" and "would frustrate the clearly expressed intent of the parties").

¶25 Our decision also finds a great deal of support in cases from other jurisdictions. In the many jurisdictions that permit indemnity agreements where the indemnitee's own negligence triggers coverage, the majority rule under the same strict standard that we apply is that when the indemnity agreement contains no reference to negligence other than in a sole negligence exception like the one at issue here, the indemnity clause clearly and unequivocally shows intent to indemnify for the indemnitee's negligence. In *Ralph M. Parsons Co. v. Combustion Equipment Associates*, 172 Cal. App. 3d 211, 219, 218 Cal. Rptr. 170 (1985), a subcontractor agreed to indemnify the contractor and owner against "all liability, loss, damage, expense, costs" arising out of the subcontractor's performance of the work under the contract "*except such loss or damage which was caused solely by the negligence of CONTRACTOR or of OWNER.*" The court said that "the indemnity agreement . . . is not silent with respect to the issue of [the contractor's] negligence; the issue of [the contractor's] negligence is specifically addressed." *Id.* at 220. The court held that the indemnity agreement

---

contrary. The court in *McDowell* appreciated the fact that *Cope* did not involve "all-encompassing language" like that disapproved in *Jones*, 84 Wn.2d at 521, that is, language requiring indemnification for all losses "arising out of, in connection with, or incident to" performance of the contract. *See also Tucci & Sons, Inc. v. Madsen, Inc.*, 1 Wn. App. 1035, 1036, 467 P.2d 386 (1970), *overruled by Jones*, 84 Wn.2d 518 (containing the same language as in *Jones*). Rather, *Cope* involved an indemnity agreement with a "sole" negligence exception to the duty to indemnify, which expressly places the indemnitee's negligence for anything less than *sole* negligence squarely within the terms of the parties' indemnity agreement, just as is true in the present case.

clearly and explicitly addresses the issue of [the contractor's] negligence. It provides that [the subcontractor] shall indemnify [the contractor] for all liability in connection with the work unless it was caused solely by the negligence of [the contractor] or [the owner]. It follows necessarily that all other liability, whether resulting from the negligence of [the subcontractor] or the concurrent negligence of [the subcontractor] and [the contractor] . . . was intended to be the responsibility of [the subcontractor].

*Id.* at 221. Under California law, agreements to indemnify against an indemnitee's own negligence "must be clear and explicit and [are] strictly construed against the indemnitee." *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 13 Cal. 3d 622, 628, 532 P.2d 97, 119 Cal. Rptr. 449 (1975). Nevertheless, California courts have held that indemnity contracts with the same language as the one here clearly provide indemnity for concurrent negligence.[4]

---

[4] The dissent says that California actually takes the "same narrow approach that we have used." Dissent at 861 (citing *Guy F. Atkinson Co. v. Schatz*, 102 Cal. App. 3d 351, 354, 358-59, 161 Cal. Rptr. 436 (1980)). The dissent is mistaken. First, we have not taken the extremely narrow approach that the dissent says we have. Second, *Guy F. Atkinson* was decided by the California Court of Appeals, First District. In a subsequent case from the First District, the court expressly agreed with *Ralph M. Parsons*, 172 Cal. App. 3d at 220 (discussed above in the text), that since a sole negligence exclusion excludes loss or damage caused solely by the indemnitee, loss or damage resulting from the combined negligence of the indemnitor and indemnitee was necessarily included and the indemnity clause was not a general indemnity agreement. *JPI Westcoast Constr., LP v. RJS & Assocs.*, 156 Cal. App. 4th 1448, 1467 n.4, 68 Cal. Rptr. 3d 91 (2007).

Third, the dissent misreads *Guy F. Atkinson* in any event. As mentioned, in *Rossmoor*, 13 Cal. 3d at 628, the California State Supreme Court stated the same rule that we apply here. That court also explained that when an indemnity clause did not address itself to the issue of the indemnitee's negligence, it was deemed a "general" indemnity agreement and would not be construed to provide indemnity unless the indemnitee was "actively" negligent, i.e., had personally participated in an affirmative act of negligence rather than mere nonfeasance. *Id.* at 629. The court also stated that "[i]n actuality, however, we do not employ the active-passive dichotomy as wholly dispositive" but instead consider the intent of the parties and whether they intended to indemnify for the indemnitee's negligence. *Id.* at 632-33.

In *Guy F. Atkinson*, the court repeated the California Supreme Court's principles respecting general and specific indemnity agreements, assumed that the indemnity agreement was a specific indemnity agreement, and proceeded to construe the contract in accord with *Rossmoor*'s direction that applicability of the indemnity agreement turned on the parties' intent. *Guy F. Atkinson*, 102 Cal. App.

¶26 In *Chance v. Designer Wardrobe Trailers, Inc.*, No. 07-9427, 2009 WL 799963, at \*3, 2009 U.S. Dist. LEXIS 23261, at \*10 (E.D. La. Mar. 24, 2009) (unpublished) (applying California law), a lessee of equipment agreed to indemnify a lessor for "[a]ll risk of loss or damage of said equipment from whatever cause during this agreement, . . . Lessee agrees to indemnify Lessor . . . for all claims . . . damages and liabilities . . . arising out of, or in connection with or resulting from equipment or materials . . . unless arising out of the sole negligence of Lessor." The court was "convinced that the indemnity agreement specifically addresses the issue of [the lessor's] own negligence and that [the lessee] ha[d] agreed to indemnify [the lessor] against its own negligence so long as [the lessor's] negligence [was] concurrent with the negligence of [the lessee] or another party." 2009 WL 799963, at \*6, 2009 U.S. Dist. LEXIS 23261, at \*18-19. The court applied California courts' holdings that agreements to indemnify for the indemnitee's own negligence "must be clear and explicit" and "express and unequivocal" and "that a specific exclusion for the indemnitee's sole negligence indicates an intent to indemnify against the indemnitee's own negligence when it is concurrent or combined with the negligence of the indemnitor or other parties." 2009 WL 799963, at \*4-5, 2009 U.S. Dist. LEXIS 23261, at \*14-16.

---

3d at 358. The indemnitee, a general contractor, sought indemnification for injury to the indemnitor-subcontractor's employee who was injured on the job. The indemnification agreement provided that the indemnitor was to indemnify the indemnitee against liability arising out of acts or omissions of the indemnitor in connection with performance of the contract unless due solely to the negligence of the indemnitee. This turned out to depend on whether the indemnitor was also negligent, which would mean the indemnitee's negligence was not the sole cause of injury. The court concluded that even if the indemnitor could be said to be negligent, "its negligence consisted at most in the fact that its two employees on the job performed their work in an area exposed to a dangerous condition created by" the indemnitee-general contractor. *Id.* at 358-59. The court believed that to read the contract as providing indemnification in such circumstances would come very close to indemnity for *sole* negligence of the indemnitee when that negligence consisted of creating a hazardous condition on the job. The court concluded that if that was what was intended, more precise language could have been employed to convey such intent and concluded that the indemnity agreement did not apply in the circumstances. *Id.* at 359. It is uncertain why the dissent believes that *Guy F. Atkinson* follows the narrow approach that it thinks this court should take.

¶27 In another case from California, a subcontractor agreed to indemnify the contractor "against any and all liability, claims, judgments, or demands . . . save and except claims or litigation arising through the sole negligence or sole willful misconduct of CONTRACTOR." *C.I. Eng'r's & Constructors, Inc. v. Johnson & Turner Painting Co.*, 140 Cal. App. 3d 1011, 1014, 189 Cal. Rptr. 824 (1983). The court followed the rules that an agreement " 'for indemnification against an indemnitee's own negligence . . . must be clear and explicit and is strictly construed against the indemnitee.' " *Id.* at 1015 (internal quotation marks omitted) (quoting *Guy F. Atkinson Co. v. Schatz*, 102 Cal. App. 3d 351, 356, 161 Cal. Rptr. 436 (1980)). While the court found some of the language used in the particular agreement unclear, it said that the language "becomes unambiguous when highlighted against the contractual limitation later alluded to in the indemnity clause, that is, that the contractor was not to be indemnified for claims or litigation arising through its sole negligence or sole wilful misconduct." *Id.*

¶28 The court explained:

> [I]s there a legally significant semantic distinction between saying "I expect to be indemnified against any and all claims arising out of job related injuries, including those arising from my negligence" and "I expect to be indemnified against any and all claims arising out of job related injuries, except those attributable to my sole negligence?" We think not.

*Id.* at 1016. The court concluded:

> We hold that a contractor who seeks indemnity against any and all liability, claims, judgments or demands, including demands arising from injuries or death of the subcontractor indemnitor's employees, arising directly or indirectly out of the indemnitor's obligations undertaken and that arise out of the contract, save and except claims or litigation arising through the sole negligence or sole wilful misconduct of contractor indemnitee is in sum and substance the same idea as would be

conveyed if the indemnitee contracted to be indemnified against any and all liability including its own acts of negligence (except of course its sole negligence . . .).

*Id.* at 1018.

¶29 In *Neustrom v. Union Pacific Railroad*, 156 F.3d 1057 (10th Cir. 1998), indemnitor Asplundh Tree Expert Company contracted to spray along indemnitee Union Pacific Railroad's lines. The party's contract included an indemnity provision containing a sole negligence exception. The court summarized applicable Kansas law, under which agreements to indemnify for the indemnitee's own negligence are disfavored and therefore must be expressed in " 'clear and unequivocal language.' " *Id.* at 1062. " '[B]road and seemingly all-inclusive language' is not sufficient to overcome the judicial disfavor of such agreements." *Id.* at 1063 (internal quotation marks omitted) (quoting *Zenda Grain & Supply Co. v. Farmland Indus., Inc.*, 20 Kan. App. 2d 728, 894 P.2d 881, 887 (1995)). In upholding the sole negligence exception, the court explained:

> Asplundh agreed to hold Union Pacific harmless "against and from any and all liability, loss, damages, claims, demands, costs and expenses of whatsoever nature" arising from injury or death to any person caused by the spraying operations, with the exception of Union Pacific's "sole negligence." The "sole negligence" provision carves out from the otherwise inclusive indemnification the lone circumstance where the indemnity clause does not apply, and that is when the injury or death was caused solely by Union Pacific's negligence. This shows that the parties clearly focused on negligence, including Union Pacific's negligence. The "sole negligence" phrase directly implies that all other kinds of negligence, e.g., joint negligence, are included within the meaning of the phrase "any and all liability, loss, damages, claims, demands, costs and expenses of whatsoever nature." Any other reading would make the "sole negligence" language of the clause meaningless and superfluous.

*Id.* at 1063-64.

¶30 In *Gulfstream Park Racing Ass'n v. Gold Spur Stable, Inc.*, 820 So. 2d 957, 961-62 (Fla. Dist. Ct. App.

2002), a stall agreement provided that a race horse trainer agreed to indemnify a track association "from any claims, losses, liabilities or demands . . . resulting from or arising directly or indirectly from the acts or omissions of Trainer." The agreement additionally provided that "[t]his indemnification provision shall not be effective as to any loss attributable [sic] exclusively to the negligence or willful act or omission of" the track association. The trainer argued that "because there is no language in the Stall Agreement specifically stating that he would indemnify [the association] for acts of [the association's] own negligence, the agreement [fell] short of the 'clear and unequivocal' standard" that applied. *Id.* at 962.

¶31 The court disagreed, holding that "the Stall Agreement clearly and unequivocally provides that [the trainer] must indemnify [the association] except where it is determined that Gulfstream was exclusively or solely negligent." *Id.* at 963; *see also Mitchell Maint. Sys. v. State*, 442 So. 2d 276, 277-78 (Fla. Dist. Ct. App. 1983) (a contractor agreed to " 'indemnify [the department of transportation] from any claim, loss, damage . . . except . . . for damages arising out of injury or damage to persons or property directly caused or resulting from the sole negligence of [the department]' " (quoting contract); provision held to be "clear and unequivocal"); *United Parcel Serv. of Am., Inc. v. Enforcement Sec. Corp.*, 525 So. 2d 424 (Fla. Dist. Ct. App. 1987).[5]

¶32 In *Shell Oil Co. v. Brinkerhoff-Signal Drilling Co.*, 658 P.2d 1187, 1189 (Utah 1983), the court stated that "[a]greements by which one person obtains another person's agreement to indemnify him from the results of his own negligence are not favorites of the law . . . and are strictly construed against the indemnitee." (Citations omit-

---

[5] All of these cases were decided by the Florida Court of Appeals, Fourth District. The dissent cites an earlier case from the same district, *Leadership Housing System of Florida, Inc. v. T&S Electric, Inc.*, 384 So. 2d 733 (Fla. Dist. Ct. App. 1980), in an attempt to show that Florida takes the same approach as the dissent urges. Dissent at 861. But given three subsequent cases to the contrary, *Leadership Housing* does not state the present view of the Fourth District.

ted.) "Nevertheless, we have frequently adhered to the majority rule that where the intention to indemnify a person from losses attributable to his own negligence is 'clearly and unequivocally expressed' in the contract language, an indemnity agreement will be upheld." *Id.* The court held that the indemnity agreement in a contract between a drilling contractor and Shell Oil Company met this requirement, where the contractor agreed

> to protect, indemnify and save Operator [Shell], its employees, and agents harmless from and against all claims, demands and causes of action of every kind and character arising . . . on account of bodily injuries, death or damage to property arising out of or in connection with the performance of this agreement, *except where such injury, death or damage has resulted from the sole negligence of Operator*, without negligence or willful act on the part of Contractor, its agents, servants, employees, or subcontractors.

*Id.* at 1189 n.1 (emphasis added) (first alteration in original).

¶33 In New York, the high court recently stated that "[c]ourts will construe a contract to provide indemnity to a party for its own negligence only where the contractual language evinces an 'unmistakable intent' to indemnify. . . . As we have explained: 'When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed.'" *Great N. Ins. Co. v. Interior Constr. Corp.*, 7 N.Y.3d 412, 417, 857 N.E.2d 60, 823 N.Y.S.2d 765 (2006) (citation omitted) (quoting *Hooper Assocs. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491-92, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989)). The court held that an indemnification clause in a lease that required indemnification for any accident occurring in the leased premises " 'unless caused solely by the [the landlord-indemnitee's] negligence' " unambiguously and unmistakably provided indemnification for the indemnitee's negligence. *Id.* at 416.

¶34 Similarly, Louisiana courts hold that agreements must be clear and explicit to establish intent to indemnify the indemnitee for its own negligence, and conclude that a

sole negligence exception can establish such intent. In fact, in *DeWoody v. Citgo Petroleum Corp.*, 595 So. 2d 395, 397 (La. Ct. App. 1992), the court said that "[i]ndeed, it is the presence of" "the one narrow exception where the indemnitee's negligence is found to be the sole cause of the accident" "that convinces us the parties intended that indemnity would be owed upon a finding of concurrent fault of the indemnitee or if the indemnitee is exonerated from fault."

¶35 Other courts have also held that under a strict standard of review, a proviso that states that indemnification will not be triggered when losses are the result of the indemnitee's sole negligence clearly and unequivocally establishes the parties' intent to indemnify in the event of the indemnitee's negligence that is not sole negligence causing the losses. *See, e.g., Fed. Ins. Co. v. Gulf Ins. Co.*, 162 S.W.3d 160, 162 (Mo. Ct. App. 2005) (intent to indemnify for the indemnitee's own negligence "must be expressed in clear and unequivocal terms"; agreement to indemnify for liability or losses " 'arising out of, resulting from, or in consequence of the performance of the work under this Contract . . . but excluding Claims caused by the sole act or omission (whether negligent or otherwise) of Indemnit[e]es' " (alterations in original) (quoting contract); "the indemnity clause clearly and unequivocally requires [indemnitor] to indemnify [indemnitee], unless the loss or liability was caused by [indemnitee's] sole negligence"); *Babcock & Wilcox Co. v. Fischbach & Moore, Inc.*, 218 Pa. Super. 324, 325-26, 280 A.2d 582 (1971) (" '[t]his agreement shall not include injuries or damage due wholly to the negligence' " of the indemnitee; language is "explicit in its terms" and "clearly and unequivocally shows the intention of the parties" that the indemnitee be indemnified for "claims from accidents for which [the indemnitee] was partly at fault, but not to do so for claims arising wholly from the negligence of [the indemnitee]").

¶36 Other cases involving indemnity agreements with sole negligence exceptions are aligned with the majority

rule, while not expressly endorsing the "clear and unequivocal" standard. *E.g., Beloit Power Sys., Inc. v. Hess Oil V.I. Corp.*, 757 F.2d 1431 (3d Cir. 1985) (*Beloit* II); *E. Airlines, Inc. v. Ins. Co. of N. Am.*, 758 F.2d 132 (3d Cir. 1985); *Meyers v. Texaco Ref. & Mktg., Inc.*, 205 Ga. App. 292, 422 S.E.2d 216 (1992). The court in *Eastern Airlines* explained that it had "concluded that there is no public policy that prevents judicial enforcement of the parties' agreement to shift the cost of or liability for the consequences of one's own negligence, *provided it is done clearly and unambiguously. Beloit [Power Sys., Inc. v. Hess Oil V.I. Corp.]*, 757 F.2d [1427,] 1430 [(3d Cir. 1985) (*Beloit* I)] (permitting indemnification for the indemnitee's own negligence)." *E. Airlines*, 758 F.2d at 135 (emphasis added). Similarly, the court in *Beloit* II said that the indemnity clause at issue there "unambiguously excuses [the indemnitor] from the indemnity obligation only if [the indemnitee] is the sole negligent party." *Beloit* II, 757 F.2d at 1433.

¶37 In *Meyers*, 205 Ga. App. at 296-97, an indemnification agreement between the owner and operator of a automobile service station provided that the operator-indemnitor agreed to indemnify the owner "from and against 'each and every claim . . . on account of personal injury . . . arising out of . . . performance of the services hereunder, except such as . . . resulted from [the owner-indemnitee's] sole negligence.' " (Emphasis omitted. Most alterations in original.) A customer was injured when she slipped and fell at the station and she sued the owner and operator. The jury found the owner and operator jointly negligent, and the owner sought indemnification under the contract.

¶38 Under Georgia case law, the court was required to scrutinize the contract closely to discover whether the contract revealed intent to indemnify for the indemnitee's own negligence, with every presumption against such intention. *Id.* at 297, 298. The court concluded that the language of the indemnification provision was clear. "If this

personal injury had resulted from [the owner-indemnitee's] *sole* negligence, [the operator] would not be liable for indemnification." *Id.* at 296. "[I]n order to construe this provision as having any reason for being or any meaning at all, an agreement to indemnify [the owner-indemnitee] as to claims arising out of joint negligence must be directly deduced." *Id.* at 297.[6]

¶39 We turn to concerns expressed in the dissent. The dissent maintains that regardless of what the rule is in other jurisdictions, we should follow our own rule. Dissent at 857.[7] But we do so here. The dissent's characterization of *Jones* and subsequent cases as stating an extremely narrow rule is simply not borne out by the language in *McDowell* and *Northwest Airlines* that was found to indemnify against the indemnitee's own negligence. In *Northwest Airlines*, the reference to the indemnitee's negligence was to indemnify for losses " 'whether or not caused by the Lessor's negligence.' " 104 Wn.2d at 153 (emphasis omitted) (quoting agreement). In *McDowell*, it was to liability caused by " 'an act or omission, negligent or otherwise, by' " the indemnitee. *McDowell*, 105 Wn.2d at 49-50 (quoting agreement). In each case, the indemnity provision explicitly identified losses due to (a) "negligence" of (b) the named indemnitee and stated that such losses gave rise to the duty to indemnify. Here, the reference is to losses " 'except only for those losses resulting solely from the negligence' " of the indemnitee. CP

---

[6] In *Meyers*, the indemnity agreement provided that Texas law would apply, unless it contravened Georgia public policy. The court rejected the Texas "express negligence doctrine" because it was contrary to Georgia public policy. The court concluded that the plain language of the contract provided indemnity in the event of joint negligence and application of the "express negligence doctrine" would render the sole negligence exception in the contract "nonsense" and without effect. *Id.* at 297.

[7] Although the dissent criticizes this opinion for considering how the "clear and unequivocal" standard is applied in other jurisdictions to indemnity agreements when a sole negligence exception is included in the agreement, ironically, the dissent cites only Texas cases and a federal case applying Texas law for the proposition that "Washington adheres to the view" that an indemnity contract cannot tell what must be indemnified with reference to what is not indemnified. Dissent at 860.

at 14, 152 (quoting Request for Proposal # 19-01 § 3.54 (Sept. 13, 2001)).

¶40 There is a specific reference to the negligence of the named indemnitee in each of the three cases. In each case, the only possible reading of the contractual language is that the duty to indemnify applies to losses resulting from the indemnitee's own negligence. In the present case, the agreement says that *only* losses resulting *solely* from First Transit's negligence do not give rise to the duty to indemnify. With this exception, the contract explicitly explains when the negligence of the indemnitee will trigger the duty to indemnify.

¶41 Contrary to the entire tone of the dissent, we did not adopt the "clear and unequivocal" rule because these agreements are contrary to public policy—in fact, we have directly held they are *not* contrary to public policy—but rather because we want assurance the parties intended to indemnify for the indemnitee's negligence. The most important concern is the parties' clearly expressed intent. And, unlike the cases preceding *Jones*, which would have allowed indemnification for the indemnitee without any mention of negligence of the indemnitee at all, here the agreement expressly addresses the indemnitee's negligence and tells us that provided that the indemnitee's negligence is not the sole cause of the injury, and provided that the other conditions of the agreement are met, the duty to indemnify will arise. The dissent is thus mistaken when it asserts that we have returned to pre-*Jones* standards.

¶42 The dissent is also mistaken about the proper analysis where indemnification for the indemnitee's own negligence is concerned. Selecting statements from *Jones*, *Northwest Airlines*, and *McDowell*, the dissent claims that we have joined a "trend" toward a "narrower application of the 'clear and unequivocal' rule," citing California, Florida, and Texas case law. Dissent at 861-62. First, the authority cited by the dissent to show a trend toward a narrower rule does not support the claim. The cited California and Florida

cases are discussed in footnotes in this opinion, which show that the dissent is simply wrong about them; these cases do not support the dissent's characterization of these states' law. As to Texas, the dissent says that in *Ethyl Corp. v. Daniel Construction Co.*, 725 S.W.2d 705 (Tex. 1987), the Texas Supreme Court "shifted to a stricter version of the 'clear and unequivocal' rule that it calls the 'express negligence doctrine.'" Dissent at 861-62. This is incorrect. The Texas Supreme Court explicitly said in a subsequent case: "In *Ethyl Corporation v. Daniel Construction Co.*, 725 S.W.2d 705 (Tex. 1987) . . . we *abandoned* the 'clear and unequivocal' rule in favor of the 'express negligence' rule." *Singleton v. Crown Cent. Petroleum Corp.*, 729 S.W.2d 690, 691 (Tex. 1987) (emphasis added).[8]

¶43 More importantly, we have not joined any such trend. The dissent reads our cases as establishing an extremely restrictive "clear and unequivocal" standard. But what has actually happened is that we have said that "clear and unequivocal" does not mean general, broad, inclusive language comparable to the rejected language in *Jones*, i.e., "arising out of, in connection with, or incident to." That kind of language does not tell a court "clearly and unequivocally" that the parties' considered the effect of the negligence of the indemnitee and intended to indemnify for the indemnitee's own negligence.

¶44 In *Northwest Airlines*, we noted that this court initially found intent to indemnify for losses due to the negligence of the indemnitee in language where "the term negligence itself need not actually be used." *Nw. Airlines*, 104 Wn.2d at 155. We said that we now require "more specific language be used to evidence a clear and unequivo-

---

[8] The Texas court's new standard has been called a "stricter than strict" standard. 3 PHILIP L. BRUNER & PATRICK J. O'CONNOR, JR., CONSTRUCTION LAW § 10.13 (2002) (chapter 10, titled *Indemnity and Contribution*, includes § 10.13 "**Interpretation of indemnity language—Stricter than strict: Express negligence approach**," which begins with the observation that Texas "found the standard strict construction test to be wanting" and thus changed course to require "magic language" before the indemnification obligation is triggered.

cal intention to indemnify the indemnitee's own negligence." *Id.* We cited a number of cases from jurisdictions following the "more specific language" requirement. Among them are *American Automobile Insurance Co. v. Seaboard Surety Co.*, 155 Cal. App. 2d 192, 197-98, 318 P.2d 84 (1957), where the court required "words or terms clearly and explicitly expressing that this was the intent of the parties; and [said] that seemingly broad language will not be isolated from its context and will be read with due regard to the maxim of strict construction"; *Scarboro Enterprises, Inc. v. Hirsh*, 119 Ga. App. 866, 870, 169 S.E.2d 182 (1969), where the court referred to "express language"; *Laskowski v. Manning*, 325 Mass. 393, 399, 91 N.E.2d 231 (1950), where the court said that "[s]uch an intent must unequivocally appear, and words of general import are not sufficient"; and *Commerce Trust Co. v. Katz Drug Co.*, 552 S.W.2d 323, 326 (Mo. Ct. App. 1977), where the court said that "the intention to assume that liability must be unequivocally expressed in the agreement" and noted that the agreement before it did "not allude to indemnity from [the indemnitee's] own negligence." In none of these cases did the court require "magic words" to show the intent to indemnify for the indemnitee's own negligence. Rather, what is "require[d] is that, for an indemnitor to be found responsible for the indemnitee's own negligence, the agreement must be clearly spelled out" *Nw. Airlines*, 104 Wn.2d at 158.

¶45 In rejecting the premise that such agreements are against public policy, the court in *Northwest Airlines* quoted the United States Supreme Court: " 'There is no rule of public policy which denies effect to their [the contracting parties'] expressed intention, but, on the contrary, as the matter lies within the range of permissible agreement, *the highest public policy is found in the enforcement of the contract which was actually made.*' " *Nw. Airlines*, 104 Wn.2d at 158-59 (emphasis added) (alteration in original) (internal quotation marks omitted) (quoting *Santa Fe & P.*

*R. Co. v. Grant Bros. Constr. Co.*, 228 U.S. 177, 188, 33 S. Ct. 474, 57 L. Ed. 787 (1913)). Plainly, the court in *Northwest Airlines* favored construction of the indemnity agreement to carry out the parties' intent, within the parameters of the "clear and unequivocal" standard.

¶46 This same premise appears in *McDowell*. There, the court explained:

> This court has long preferred to enforce indemnity agreements as executed by the parties. . . . We have established specific limits to the enforceability of indemnity contracts to accommodate the statutory mandates of the Industrial Insurance Act, RCW Title 51, . . . and of RCW 4.24.115. . . . However, as we stated in [*Nw. Airlines*], the general rules that disfavor an agreement to indemnify an indemnitee against its own negligence do not render such a clause void or unenforceable as a matter of law. . . . Instead, . . . "the agreement must be clearly spelled out." [*Nw. Airlines*], 104 Wn.2d at 158. . . . Parties rely on indemnity agreements for allocating the responsibility to purchase insurance. . . . Here, [the parties] clearly spelled out their allocation of responsibilities. It is not for this court to frustrate such a planning device.
>
> . . . .
>
> "Contracts of indemnity . . . must receive a reasonable construction."

*McDowell*, 105 Wn.2d at 53-54 (citations omitted).

¶47 The indemnity agreement here specifically references negligence of the indemnitee and, reasonably construed, explicitly shows the parties' intent to indemnify for the indemnitee's negligence but not its sole negligence. The agreement is not against public policy—indeed, the parties may agree to indemnify even in the case of the indemnitee's sole negligence. These are commercial parties and nothing indicates any overreaching or one-sided bargaining power. We have no good reason not to enforce their agreement according to its terms.

¶48 Finally, we comment briefly on the fact that First Transit itself was not negligent. This is no bar to

enforcing the indemnification agreement. The indemnity agreement clearly and unequivocally provides that First Transit agreed to indemnify losses in connection with the work performed under the contract as a result of Community Transit's negligence. The agreement contains no language stating that the obligation to indemnify for losses resulting from the indemnitee's negligence is conditioned on the indemnitor also being negligent. Parties have broad control over the provisions of their private contractual indemnity agreements. *See generally Redford v. City of Seattle*, 94 Wn.2d 198, 206-07, 615 P.2d 1285 (1980). As noted, an indemnity agreement can be enforced that provides for indemnification even when losses result from the indemnitee's own *sole* negligence, provided that the agreement clearly spells this out. *Nw. Airlines*, 104 Wn.2d at 158. In such circumstances, the indemnitor plainly would not have to be negligent, demonstrating that the negligence of the indemnitor is not a prerequisite to indemnifying the indemnitee.

## CONCLUSION

¶49 Provided that parties write their indemnity agreements in language that clearly and unequivocally shows intent to indemnify against claims and losses that result from the indemnitee's own negligence, their indemnity agreements will be enforceable. There is no public policy in this state against indemnity agreements that indemnify for the indemnitee's own, even sole, negligence, unless the indemnity agreement falls under RCW 4.24.115, which is not relevant here.

¶50 As we have previously held, and in accord with the decisions of numerous courts from other jurisdictions applying the same standard that we apply, a "sole negligence exception" in an indemnity agreement evidences the parties' intent that indemnity be triggered when claims and losses result from the negligence of the indemnitee unless solely from the negligence of the indemnitee.

¶51 The indemnity agreement at issue contains express language showing the clear intent of the parties to indemnify for losses resulting from the indemnitee's negligence, as long as the indemnitee is not solely negligent. The agreement thus satisfies the "clear and unequivocal" standard required to enforce agreements to indemnify the indemnitee for its own negligence. Accordingly, the Court of Appeals is reversed and this matter is remanded for further proceedings consistent with our decision.

C. JOHNSON, OWENS, and J.M. JOHNSON, JJ., and ALEXANDER, J. PRO TEM., concur.

¶52 STEPHENS, J. (dissenting) — This case turns on whether the parties' indemnity provision clearly and unequivocally required First Transit to indemnify against losses caused by Community Transit's negligence. The majority holds it does, relying on decisions from other jurisdictions. Whatever the rule may be in other jurisdictions, *this* court has held that indemnity provisions covering losses that result from the indemnitee's own negligence "are not favored and are to be clearly drawn and strictly construed, with any doubts therein to be settled in favor of the indemnitor." *Jones v. Strom Constr. Co.*, 84 Wn.2d 518, 520, 527 P.2d 1115 (1974). Our reluctance to find that parties intend to indemnify against losses caused by the indemnitee's negligence stems from our desire to "prevent injustice, and to insure that a contracting party has fair notice that a large and ruinous award can be assessed against it solely by reason of negligence attributable to the other contracting party." *McDowell v. Austin Co.*, 105 Wn.2d 48, 53, 710 P.2d 192 (1985) (citing *Joe Adams & Son v. McCann Constr. Co.*, 475 S.W.2d 721, 722 (Tex. 1971)).

¶53 Under Washington law, only " 'clear and unequivocal' " language showing the parties' intent to cover losses resulting from the indemnitee's concurrent negligence will

overcome this reluctance. *McDowell*, 105 Wn.2d at 52-53 (quoting Maurice T. Brunner, Annotation, *Liability of Subcontractor Upon Bond or Other Agreement Indemnifying General Contractor Against Liability for Damage to Person or Property*, 68 A.L.R.3D 7, 69 (1976)). "[F]or an indemnitor to be found responsible for the indemnitee's own negligence,"—sole or concurrent—"the agreement must be clearly spelled out." *Nw. Airlines v. Hughes Air Corp.*, 104 Wn.2d 152, 158, 702 P.2d 1192 (1985).

¶54 Applying this standard, it is clear the indemnity provision at issue falls short of the unequivocal language Washington law requires. Therefore, I respectfully dissent.

## ANALYSIS

¶55 The majority disregards this court's move toward a narrow interpretation of indemnity provisions based on the concerns articulated in *McDowell*. This disregard is evidenced by the majority's citation to *Cope v. J.K. Campbell & Associates*, 71 Wn.2d 453, 429 P.2d 124 (1967), as supporting its conclusion that the parties here clearly and unequivocally intended to indemnify against losses caused by Community Transit's negligence. Majority at 841 (citing *Cope*, 71 Wn.2d at 454). Importantly, in cases after *Cope* we have moved away from our previous willingness to generously read indemnity provisions. A brief sketch of this history illustrates why the majority's citation undercuts its view.

¶56 Historically, courts identified "a clear and unequivocal intention to indemnify for indemnitee's own negligence by looking at the entire contract or at the all-encompassing language of the indemnification clause." *Nw. Airlines*, 104 Wn.2d at 155. For example, in *Tucci & Sons, Inc. v. Madsen, Inc.*, 1 Wn. App. 1035, 467 P.2d 386 (1970), *overruled by Jones*, 84 Wn.2d at 523), a subcontractor entered into an agreement to perform electrical services for the general contractor. The agreement contained an indemnity provi-

sion that required the subcontractor (indemnitor) to reimburse the general contractor (indemnitee) for all losses " 'arising out of, in connection with, or incident to' " the subcontractor's performance of the contract. *Tucci*, 1 Wn. App. at 1036. One of the subcontractor's workers was injured on the job as a result of the general contractor's negligence, and the worker sued the general contractor. The general contractor tendered the defense of the action to the subcontractor under the indemnity provision. The court concluded that based on the " 'sweeping and all-embracing' " language of the indemnity provision, the losses resulting from the general contractor's own negligence were covered, even though they were not expressly mentioned in the indemnity provision. *Id.* at 1038. The subcontractor was thus obligated to indemnify the general contractor for losses resulting from the general contractor's own negligence.

¶57 We later moved away from such an expansive reading of the broad terms of an indemnity clause. In *Jones*, we interpreted an indemnity clause identical to the one analyzed in *Tucci*, which required the indemnitor to reimburse the indemnitee for all losses " 'arising out of, in connection with, or incident to' " the indemnitor's performance of the contract. *Jones*, 84 Wn.2d at 521. Overruling *Tucci*, we concluded that the parties' intent to indemnify for the indemnitee's own negligence was not clear and unequivocal, despite the clause's broad and seemingly all-inclusive language. *Id.* at 521-23. We did not purport to specify the language that would be necessary to demonstrate the parties' clear and unequivocal intent but merely noted that failing to mention the indemnitee's conduct at all in the indemnity clause fell short of providing the requisite clarity. *See id.* at 521-22.

¶58 Following *Jones*, we have consistently required the parties' intent to cover losses caused by the indemnitee's own negligence to be manifest in the contractual language. We have endorsed a stringent analysis that requires spe-

cific language showing an intent to indemnify for the indemnitee's own negligence. *Nw. Airlines*, 104 Wn.2d at 156. This intention must be "clearly spelled out." *McDowell*, 105 Wn.2d at 54. Our precedent demonstrates that "clear and unequivocal" means just what it says: the intent to indemnify for losses caused by the indemnitee's own negligence must be *expressly* and *specifically* stated in the indemnity provision.

¶59 Notwithstanding our stringent test, the majority finds this intent by insinuation. Because the indemnity provision specifically excluded coverage for situations in which Community Transit's sole negligence caused the loss, the majority reasons it must have included circumstances in which the loss was caused by Community Transit's concurrent negligence. Majority at 839-40.

¶60 This holding is contrary to our requirement that indemnification provisions be express and specific before we will find coverage for losses stemming from the indemnitee's negligence. *See McDowell*, 105 Wn.2d at 54; *Nw. Airlines*, 104 Wn.2d at 155-56, 158; *Jones*, 84 Wn.2d at 521-23. Washington adheres to the view that a contract "cannot define what is included in an indemnity provision by stating what obligations are outside that indemnity agreement." *Quorum Health Res., LLC v. Maverick County Hosp. Dist.*, 308 F.3d 451, 462 (5th Cir. 2002); *see also Atl. Richfield Co. v. Petroleum Pers., Inc.*, 768 S.W.2d 724, 725 (Tex. 1989) (contract indemnifying against all claims except those resulting from " 'the sole negligence of [the indemnitee]' " did not cover indemnitee's concurrent negligence because "it specifically stated what was not to be indemnified" and it required the indemnitor "to deduce his full obligation from the sole negligence exception" (citing *Singleton v. Crown Cent. Petroleum Corp.*, 729 S.W.2d 690 (Tex. 1987)). The agreement between Community Transit and First Transit lacked the requisite clarity and specificity, and it therefore should not be construed to cover losses resulting from Community Transit's own negligence.

¶61 In short, the majority would have us return to the old approach and apply the "clear and unequivocal" rule broadly. Contrary to the majority's view, *McDowell*'s isolated citation to *Cope* did not thrust us back to the pre-*Jones* era of construing indemnity provisions based on their broad and all-encompassing language. Nor does "overwhelming authority" from other jurisdictions compel us to reverse the trend of our own precedent, especially because at least two of the jurisdictions the majority relies on have taken the same narrow approach that we have used. *See Leadership Hous. Sys. of Fla., Inc. v. T&S Elec., Inc.*, 384 So. 2d 733, 734 (Fla. Dist. Ct. App. 1980) (contract did not clearly cover indemnitee's concurrent negligence where it indemnified for all losses " '[e]xcept due to [indemnitee's] sole negligence' " (emphasis omitted)); *Guy F. Atkinson Co. v. Schatz*, 102 Cal. App. 3d 351, 354, 358-59, 161 Cal. Rptr. 436 (1980) (contract did not clearly and explicitly cover indemnitee's concurrent negligence where it indemnified all losses "unless due solely to [indemnitee's] negligence" (emphasis omitted)).

¶62 Indeed, this trend toward a narrower application of the "clear and unequivocal" rule highlights a common division in approaches among courts of various jurisdictions. The rationale for adopting a narrow approach was articulated by the Texas Supreme Court when it shifted to a stricter version of the "clear and unequivocal" rule that it calls the "express negligence doctrine":

> As we have moved closer to the express negligence doctrine, the scriveners of indemnity agreements have devised novel ways of writing provisions which fail to expressly state the true intent of those provisions. The intent of the scriveners is to indemnify the indemnitee for its negligence, yet be just ambiguous enough to conceal that intent from the indemnitor. The result has been a plethora of law suits to construe those ambiguous contracts. We hold the better policy is to cut through the ambiguity of those provisions and adopt the express negligence doctrine.

*Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 707-08 (Tex. 1987). Although we have not adopted a different name for the "clear and unequivocal" rule, the definite trend of our precedent has been to narrowly apply the rule. The fact that a contrary approach has been taken in other jurisdictions should not compel us to reverse this trend. Instead, absent " 'a clear showing that [our] established rule is incorrect and harmful,' " *State v. Barber*, 170 Wn.2d 854, 863, 248 P.3d 494 (2011) (quoting *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970)), we should remain true to our precedent.

¶63 As discussed above, this precedent requires a clear, specific, and explicit statement showing intent to cover an indemnitee's negligence. Because the provision here did not explicitly require indemnification in the event of Community Transit's concurrent negligence, it fell short of our requirements.

¶64 In the absence of clear and unequivocal language providing coverage for Community Transit's own negligence, the sole triggering condition under the parties' indemnity provision is First Transit's conduct. Thus, for the indemnity provision to apply, the losses must have been either " 'in connection with' " First Transit's work under the contract or " 'caused or occasioned' . . . by" First Transit's presence in proximity to Community Transit's property. *Snohomish County Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc.*, noted at 152 Wn. App. 1021, 2009 WL 3018749, at \*5, 2009 Wash. App. LEXIS 2423, at \*12-15.

¶65 Here, the "in connection with" clause and the "caused or occasioned by" clause of the indemnity provision suggests that First Transit's conduct in proximately causing the accident can trigger the duty to indemnify. In *Jones*, the indemnity provision granted coverage for losses " 'arising out of,' '*in connection with*,' 'or incident to' the [indemnitor's] 'performance' of [the contract]." 84 Wn.2d at 521 (emphasis added). We explained that under the plain language of the provision in that case, indemnity was not

triggered unless there was an "act or omission" on the part of the indemnitor that contributed to the losses. *Id.* at 521-22. And such an "act or omission," we noted, required more than the indemnitor's but-for causal connection to the losses; the indemnitor's mere presence at the scene of the accident was not enough to trigger indemnity. *See id.* Likewise, our cases interpreting the phrases "caused by" and "occasioned by" indicate that losses are not caused or occasioned by a condition unless that condition is more than an indirect cause-in-fact of the losses. *See N. Pac. Ry. v. Sunnyside Valley Irrig. Dist.*, 85 Wn.2d 920, 922-23, 540 P.2d 1387 (1975) (interpreting "occasioned by"); *Dirk v. Amerco Mktg. Co. of Spokane*, 88 Wn.2d 607, 610-11, 565 P.2d 90 (1977) (interpreting "occasioned by"); *Scruggs v. Jefferson County*, 18 Wn. App. 240, 244, 567 P.2d 257 (1977) (interpreting "caused by"). Accordingly, if the First Transit bus was not a proximate cause of the accident, the indemnity provision is not triggered.

¶66 Here, First Transit's presence at the scene was nothing more than a cause-in-fact of the resulting losses. Indeed, First Transit's contribution to the accident was a complete fortuity. The proximate causes of the accident were the Honda vehicle and the Community Transit bus, both of which rear-ended the vehicles in front of them. It may be the case that but for the First Transit bus's location in front of the Community Transit bus, the passengers' injuries would not have occurred. However, the First Transit bus's fortuitous presence was not a proximate cause of the accident.[9] It was at most an indirect cause-in-fact of any

---

[9] At the Court of Appeals, First Transit suggested that "in connection with" required not only proximate cause but also negligence on the part of the indemnitor. Br. of Resp't at 13 n.3. In other words, First Transit argued that *Jones*'s "act or omission" requirement is synonymous with negligence. It is true that *Jones*'s use of the phrase "act or omission" suggests some relationship to negligence. *See Jones*, 84 Wn.2d at 520-22. But the touchstone of indemnity is causation, not negligence. *See, e.g., Cont'l Cas. Ins. Co. v. Mun. of Metro. Seattle*, 66 Wn.2d 831, 835-36, 405 P.2d 581 (1965). Parties can agree to pin indemnity to the indemnitor's nonnegligent actions that result in claims against the indemnitee. *Id.* Here, it does not matter whether "act or omission" requires

losses to Community Transit. In short, the First Transit bus simply had the misfortune of being in the wrong place at the wrong time. This chance involvement in the accident did not trigger First Transit's duty to indemnify Community Transit.

## CONCLUSION

¶67 The concern we expressed in *McDowell* remains: we should read indemnity provisions with the goal of "prevent-[ing]" the "injustice" resulting from a broad application of the "clear and unequivocal" rule. *McDowell*, 105 Wn.2d at 53. I believe the majority errs in veering off the course we have charted since *Jones* and in following the contrary approach of other jurisdictions. We should hew closely to our precedent and refuse to find intent to indemnify against losses resulting from an indemnitee's negligence unless such intent is specifically and explicitly stated in the parties' contract. Here, it was not. Thus, the indemnification provision does not encompass losses covered by Community Transit's concurrent negligence. Finally, because First Transit was not a proximate cause of Community Transit's losses, the duty to indemnify was not otherwise triggered. The trial court had it right when it granted summary judgment in First Transit's favor. The Court of Appeals had it right when it affirmed. I would affirm the Court of Appeals.

CHAMBERS and FAIRHURST, JJ., and SANDERS, J. PRO TEM., concur with STEPHENS, J.

---

negligence, however, because First Transit's conduct was merely a cause-in-fact of the losses, which itself falls short of an "act or omission" under *Jones. See Jones*, 84 Wn.2d at 521-22.