[No. 9755.    Department Two.    January 13, 1912.]

JOHN McINTYRE *et al.*, *Appellants*, v. CORA D. JOHNSON
*et al.*, *Respondents.*[1]

CONTRACTS — CONSTRUCTION — PERFORMANCE OR BREACH — VENDOR
AND PURCHASER.  Where defendant agreed to procure plaintiffs the
title to land at the purchase price of $450 per acre, which would
make the price $6,750, and agreed that with plaintiffs' payment of
$3,750 cash, he would pay off all past due claims against the land,
leaving only a note of $3,000 coming due in January to be assumed
by the plaintiffs, his failure to pay $533 interest then due on the
$3,000 note is a breach of his contract, for which he is liable in
damages.

VENDOR AND PURCHASER—CONTRACT—BREACH—REMEDIES OF VENDEE
—DAMAGES.  Where a contract for the conveyance of land is
breached by the failure to pay off a claim against the land, the
vendee may retain the land and sue for damages for breach of the
contract, without offering to rescind.

BROKERS—CONTRACT — LIABILITY TO PURCHASER — PRINCIPAL AND
AGENT.  Where the owners authorized defendant to sell land to re-
imburse himself for indebtedness and to retain any excess as pay
for his services in making the sale, defendant's agreement with
plaintiffs, the vendees, to procure a clear title and to discharge all
claims against the land for a specified sum, is his personal con-
tract, and the owners are in no way liable thereon; as the contract
could be enforced only against parties thereto.

APPEAL—DECISION—REMAND.  Upon reversing a nonsuit, granted
at the close of plaintiffs' case, the case must be remanded for a new
trial, notwithstanding that the testimony of the defendant, when
called as a witness for the plaintiff, indicates that the plaintiff
would be entitled to judgment; since the defendant cannot be fore-
closed from making his defense.

Appeal from a judgment of the superior court for Spo-
kane county, Gay, J., entered May 27, 1911, upon findings
in favor of the defendants, dismissing an action on contract,
upon granting a nonsuit, after a trial to the court.  Re-
versed.

*D. R. Glasgow*, for appellants.
*John C. Kleber*, for respondents.

[1]Reported in 120 Pac. 92.

Morris, J.—On September 19, 1910, respondents Johnson held a contract for the purchase of certain lands, in Spokane county.  Being unable to meet the payments then due and to become due, they arranged with respondent Bedtelyon, to whom they were indebted for certain services in planting and caring for an orchard on the land, to procure a purchaser for their contract at such a price as would reimburse them for the payments they had made and pay Bedtelyon the money due him, allowing Bedtelyon to retain for his services in procuring such purchaser any sum he might obtain in excess of the amounts then owing.  Bedtelyon approached appellants in regard to a purchase of the contract, offering it to them at a price of $450 an acre, which would make the purchase price to appellants $6,750, which sum was finally agreed upon.  It was then agreed that appellants should pay $3,750 in cash to Bedtelyon, out of which he would pay all outstanding claims against the lands, except a $3,000 note due the following January, which appellants assumed, making the $6,750 agreed upon as the price of the land.  In order that there may be a clear understanding of what the agreement was in regard to the price to be paid, we quote from the testimony of Bedtelyon, which, in our judgment, establishes the merits of the controversy contrary to the holding of the court below in dismissing the action.  This testimony is the most favorable in support of respondents' contention, and they should have little cause for complaint if the cause of action against them is established out of their own mouths.  This testimony was as follows:

"I told Mr. McIntyre that I would clean up everything, but the $3,000 note, if he wished to buy it, and turn over a clear title, his assignment of contract and everything except the $3,000 note that was not due, so that everything past due would be paid up and all there was coming up would be the $3,000 note coming due in January.  Q.  Then the purchase price was $6,750?  A.  $450 an acre; yes, sir.  Q. And he was to get everything clear except the $3,000 note?

A. Nothing said about the $3,000. I said I would clear up everything against the contract. Those are the words we used, except the $3,000 note due in January."

There can be little doubt from this testimony but that, as contended by appellants, the entire purchase price of the land to be paid by them was $6,750, and that out of the cash payment of $3,750 Bedtelyon agreed to pay all sums due upon the contract except $3,000, which was the only payment to be assumed by appellants. Upon this understanding, appellants paid Bedtelyon $3,750, and obtained an assignment of the contract. Bedtelyon paid all claims against the land, and took up the two notes then due, but failed to pay $533 interest then due upon the $3,000 note, which appellants subsequently paid to protect the contract, and brought this action against the Johnsons and Bedtelyon to recover the amount from them, basing the right of action upon the contract with Bedtelyon. The action was dismissed by the court below upon the theory that the action was based upon fraud, but that neither the complaint nor the proof established such an action, and that appellants could recover only upon tendering back the contract and suing for the amount paid.

We cannot agree with the trial court. The complaint makes no attempt to set up an action based upon fraud. It sets forth the making of a contract by Bedtelyon, acting for himself and as agent for the Johnsons, to sell the land for a total price of $6,750, and representing that all claims against the land had been paid except the principal of the $3,000 note, when in fact the sum of $533 was then due and unpaid as interest on the $3,000 note; that, believing such to be the fact, appellants made no investigation to ascertain the true facts. Whether an action for fraud, or any other sort of action, would lie under these facts is immaterial. The only thing that need be discussed, since no attack is made upon the complaint and the only defense is a general denial and lack of diligence, is, Does the complaint and proof thereun-

der entitle appellants to a recovery? The testimony of Bed-
telyon establishes an agreement to procure an assignment of
the Johnson contract to appellants for $6,750; that out of
the cash payment of $3,750 Bedtelyon would pay all claims
against the land then due; that the only payment to be
made by appellants was $3,000 represented by a note due in
January, and that the total price to be paid by appellants
was $6,750, increased by such interest as they allowed to ac-
cumulate on the $3,000 note from the date of their purchase,
as the $6,750 was understood to represent the amount nec-
essary to be paid to free the land from all charges up to the
date of the contract.

Considering this as an enforceable contract—since the
only defense to it is a general denial—when Bedtelyon
breached it by failing to pay the interest then due on the
$3,000 note, irrespective of any other right of action then
accruing, appellants could bring an action to enforce their
rights under the contract, and compel the payment of this
$533 as one of the items Bedtelyon agreed to pay. They
were not compelled, as suggested by the trial court, to sur-
render the fruits of their contract. They could retain all its
benefits, and seek the aid of the law in compelling Bedtelyon
to pay them the damages sustained by them because of his
failure to perform his agreement. Appellants were not seek-
ing, nor was it necessary that they should seek, a rescission of
their contract and ask that all parties be placed *in statu quo.*
Rather were they seeking, as was their undoubted right, an
enforcement of the contract. This contract could, however,
be enforced only against those party to it. There is no evi-
dence to justify a recovery against the Johnsons, either as
principals or through any agency of Bedtelyon. It was for
the interest of Bedtelyon to make this contract. It was the
only way he could get his money out. The only interest the
Johnsons had in the transfer was their equity in the contract,
and Bedtelyon was left to his own devices to make an ar-
rangement that would let him out and give him an additional

profit, if he could make it.   He choose the method adopted in his contract with appellants.   It was his contract, and he only can be compelled to respond to its fulfillment.

Upon motion of respondents Johnson, a nonsuit was sustained as to them.   This ruling we sustain.   The same motion was made in behalf of respondent Bedtelyon, which does not appear to have been passed upon by the court.   Bedtelyon was called as a witness by appellants after these motions were made, in an attempt to prove agency; and while such witness, testified fully as to all the facts surrounding the making of the contract.   During his cross-examination, without anything more being said upon the motions, the court granted the motion as to respondents Johnson, and after the conclusion of such examination, indicated its view as to the law of the case, and dismissed the action.   In the formal judgment, a recital is made that it is one of nonsuit, and we must so regard it.   While, therefore, we are of the opinion that the evidence before us entitles appellants to a judgment in their favor as prayed for, we cannot enter such judgment here, nor direct its entry in the court below, and thus foreclose respondents of anything they may be prepared to offer in defense of the action.

The judgment is therefore reversed as to respondent Bedtelyon, and the cause remanded for further proceedings.

DUNBAR, C. J., CHADWICK, CROW, and ELLIS, JJ., concur.