## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION THREE

| | | |
|---|---|---|
| DANA WIDRIG, | ) | |
| | ) | No. 31687-4-III |
| Plaintiff, | ) | Consolidated with 32122-3-III |
| | ) | |
| v. | ) | |
| | ) | |
| THE VILLAS AT MEADOW SPRINGS, | ) | UNPUBLISHED OPINION |
| a Washington limited liability company, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| ROBERT YOUNG AND ASSOCIATES, | ) | |
| LLC, a Washington limited liability | ) | |
| company, and RIVERSTONE | ) | |
| RESIDENTIAL WEST, LLC, a Delaware | ) | |
| limited liability company, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| HSC REAL ESTATE, INC., a | ) | |
| Washington corporation, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — The owner and manager of an apartment complex dispute whether, under an indemnity clause in their management agreement, the owner should indemnify the manager for the cost of defending a tenant's claim resulting from the manager's negligence. The trial court ruled in favor of the owner on summary judgment and held

that the owner need not indemnify the manager for the expenses of defending the suit brought by the tenant. We reverse and hold that the owner must indemnify the manager under the terms of the management agreement to the extent of insurance coverage.

## FACTS

VMSI, LLC (VMSI or owner) owns The Villas at Meadow Springs (The Villas) apartment complex in Richland. VMSI entered into a contract with HSC Real Estate, Inc. (HSC or manager), for management of The Villas. An opening paragraph of the agreement defined "Project" as the property: "Villas at Meadow Springs." Clerk's Papers (CP) at 301.

The management agreement required both parties to carry insurance. Section 10 required VMSI to obtain and keep adequate insurance "against liability . . . for loss, damage or injury to property or persons which might arise out of the occupancy, management, operation or maintenance of the [p]roject" and to name HSC as an additional insured on all of its liability policies for the project. The agreement demanded that the liability insurance be adequate to protect the interests of both the owner, VMSI, and the agent, HSC. HSC was to maintain insurance against its misfeasance, malfeasance, or nonfeasence relating to the management of The Villas.

The management agreement contained an indemnity clause. Section 11 of the agreement stated:

2

11. INDEMNIFICATION OF AGENT: Except in cases of negligence or Agent's intentional misconduct, Owner shall release, indemnify, defend and save Agent harmless from all suits, claims, assessments and charges which pertain to the management and operation of the Project. The Project's duty to indemnify shall include all litigation expenses including reasonable attorney's fees. Regardless of Agent's conduct, Agent shall be indemnified to the extent of available insurance coverage.

CP at 62. The last sentence of paragraph 11 is the focus of this appeal.

Paragraph 20 read:

20. LITIGATION: Any action brought to enforce or to interpret the terms and provisions of this Agreement shall be brought in the Superior Court of the State of Washington, in and for Benton County. The prevailing party in any such action shall be entitled to recover the reasonable costs and expenses of such litigation, including, but not limited to, the reasonable fees and expenses of attorneys and certified public accountants.

CP at 306.

The management agreement is printed on HSC stationery. Nevertheless, during oral argument, neither party could identify who drafted the agreement. Wash. Court of Appeals oral argument, *Widrig v. The Villas at Meadow Springs*, No. 31687-4-III; 32122-3-III (Dec. 4, 2014), 4 min., 50 sec.; 7min.; 16 min., 40 sec. (on file with court).

In December 2009, an employee of HSC sexually assaulted Dana Widrig in her apartment at The Villas. The State of Washington convicted the employee of assault. In October 2011, Widrig filed a civil suit against VMSI and HSC, as well as other

3

defendants later voluntarily dismissed. Widrig's complaint alleged that VMSI's and HSC's negligent hiring, negligent supervision, negligent management, and negligent security were the cause of the assault and her injuries.

A few weeks after Dana Widrig filed her complaint, HSC sent a letter to VMSI requesting indemnification for all legal expenses and costs associated with the litigation. HSC emphasized the indemnification provision in section 11 of the management agreement. HSC wrote: "In accordance with the terms of the Agreement, HSC, as [a]gent for [p]roperty [o]wner, is submitting this lawsuit to [VMSI] for handling and requests that you promptly forward to your insurance carrier." CP at 299.

In December, HSC answered Dana Widrig's complaint. HSC also filed a cross complaint against VMSI, asserting a breach of contract claim for failing to obtain adequate insurance and for failing to defend, indemnify, and hold HSC harmless. HSC's insurance company, Chartis, hired counsel Martens & Associates to defend against Widrig's complaint and to assert the cross claim against VMSI.

In May 2012, VMSI responded to HSC's cross claim and also filed a cross claim of its own. VMSI contended that it was entitled to indemnification or contribution from HSC if VMSI is found liable for the acts of HSC employees.

A month later, VMSI's insurance carrier, Fireman's Fund Insurance Company (Fireman's), confirmed that HSC was a named insured under VMSI's liability policy and

accepted the defense, with a reservation of rights, of HSC for Dana Widrig's claims. Fireman's appointed defense counsel to represent HSC and agreed to reimburse Chartis for costs and fees incurred to defend HSC prior to the appointment. However, HSC did not agree to substitute Fireman's appointed counsel for its current counsel. HSC based its denial of substitution on appointed counsel's conflict of interest and on the timing of the appointment.

PROCEDURE

VMSI moved for summary judgment against HSC and Dana Widrig. VMSI contended that HSC's cross claim for inadequate insurance should be dismissed because HSC failed to contest, as allowed under the contract, the sufficiency of the insurance when it was purchased. VMSI contended that Widrig's claims against VMSI should be dismissed because VMSI was not liable for HSC's negligent acts.

HSC opposed VMSI's summary judgment motion and filed its own motion for summary judgment. HSC asked the court to rule that the insurance and indemnity provisions of the management agreement were valid and enforceable and that the provisions applied to the claims asserted by Dana Widrig. The trial court partly granted HSC's motion and ruled that sections 10 and 11 of the management agreement were enforceable. The court also partly granted VMSI's summary judgment and ruled that HSC was barred from contesting the sufficiency of the dollar limits of the insurance

policies. The court denied the remainder of both parties' summary judgment motions. The court explained in its oral ruling that a question remained, because of Fireman's reservation of rights, as to whether VMSI obtained the insurance for HSC demanded by section 10 of the agreement. The trial court also bifurcated HSC's and VMSI's cross claims from Widrig's claims. The court deferred resolution of the cross claims until Widrig's claims against HSC and VMSI were resolved.

Fireman's lifted its reservation of rights. In a letter to HSC, Fireman's expressed hope that the lifting would align the defenses of the parties and extinguish the cross claims. Fireman's reminded HSC that it appointed counsel to defend HSC and, if HSC wished to keep its personal counsel involved in the case, personal counsel should cooperate with appointed counsel. Pursuant to Fireman's previous request, HSC sent Fireman's a statement of costs for attorney services. The statement included all services provided to HSC, including costs for pursuing the cross claims against VMSI. The record shows no payment on that statement.

In early 2013, Dana Widrig's claims against HSC and VMSI were resolved by settlement and dismissed by stipulation. The amount of the confidential settlement did not exceed the limits of the Fireman's policy. HSC did not pay any of the settlement amount. Once the settlement was reached, counsel appointed by Fireman's withdrew from representation of HSC.

6

HSC continued to pursue its cross claims against VMSI for indemnification. HSC renewed its summary judgment motion and asked the trial court to enter summary judgment on its cross claim. HSC contended that the trial court already determined, in response to the first summary judgment motion, that Dana Widrig's claims against HSC were covered by the indemnity clause of the management agreement. HSC maintained that, under the indemnity clause, VMSI was required to indemnify HSC for all claims, even negligence, to the extent of available insurance. HSC requested payment by VMSI of the former's fees, costs, and expenses in defending Widrig's suit. HSC also requested an award of attorney fees and costs under the management agreement's provision that grants attorney fees to the prevailing party in an action to enforce the contract.

VMSI contested HSC's renewed motion for summary judgment and requested dismissal of HSC's cross claim. VMSI maintained the enforceability of the agreement was never challenged, and the trial court's initial summary judgment order made no determination as to whether the indemnity clause covered HSC's claims or the meaning of the clause. VMSI also contended that the indemnity clause did not require VMSI to indemnify HSC because the duty to defend did not apply in cases of HSC's negligence, and negligence was Dana Widrig's only remaining claim at settlement. VMSI also contended that, once it purchased insurance for HSC as required by the contract, the indemnity clause did not permit an action against VMSI. According to VMSI, VMSI

must indemnify HSC only in claims not asserting HSC's negligence, regardless of whether the act was covered by insurance or not. VMSI maintained that any claims by HSC for unpaid costs should be brought against Fireman's as the insurer and not VMSI. Nevertheless, HSC never joined Fireman's as a party to the litigation.

The trial court in essence granted VMSI summary judgment. The trial court denied HSC's renewed motion for summary judgment and dismissed its cross claim against VMSI. The court determined that VMSI was the prevailing party and entitled to attorney fees under the management agreement.

HSC moved for reconsideration. Based on an argument made by VMSI during summary judgment, HSC argued, in its new motion, that whether HSC could pursue a claim against Fireman's was irrelevant to VMSI's duties under the indemnity clause. HSC also challenged VMSI's argument that HSC had no damages because Chartis, as HSC's own insurer, covered the costs of litigation.

The trial court affirmed its earlier decision, noting that it took HSC's new arguments on reconsideration into account at the time of its initial decision. The court relied on the language of the management agreement that exempts VMSI from defending HSC in cases of HSC's negligence or intentional misconduct. Because Dana Widrig's claim centered on HSC's negligence, the court ruled that HSC's position requiring indemnification was contrary to the plain language of the contract. In a written

8

memorandum, the trial court wrote:

> To accept HSC's position would require the court to ignore and give no meaning to the plain language in Section 11 of the contract that states that "<u>Except in cases of negligence </u>or Agent's intentional misconduct, Owner is required to "[sic] release, indemnify, <u>defend</u>, and save Agent harmless from all suits, claims, assessments and charges." (emphasis added) Since this is clearly a claim of negligence on the part of the Agent, HSC, this court finds that to accept HSC' s position would be contrary to the plain language of the contract.

CP at 417.

VMSI filed a motion with the trial court for an award of costs and attorney fees against HSC. In response, HSC contended that attorney fees were not proper because VMSI's motion was an attempt by Fireman's to subrogate its attorney fees against its insured, HSC. Alternatively, HSC contended that VMSI failed to prove the reasonableness of its fees. The trial court rejected HSC's subrogation argument since Fireman's was not a party to the action and not the party seeking attorney fees. The court awarded VMSI $53,729.15 in attorney fees after a detailed review of VMSI's accounting records.

## LAW AND ANALYSIS

*ISSUE 1: Whether the indemnity provision of the management agreement imposed a duty on VMSI to indemnify HSC, regardless of HSC's negligent conduct?*

*ANSWER 1: Yes, to the extent of available insurance coverage.*

We begin with two preliminary observations. First, the parties proceed as if Dana Widrig's suit and settlement of her claim were based on HSC's sole negligence. We will assume such also.

Second, because the lower court resolved the dispute on summary judgment, we need not defer to the trial court's ruling. Summary judgment orders are reviewed de novo on appeal. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). When there are no disputed material facts and no extrinsic evidence presented on the issue, the meaning of a contract may be decided as a matter of law. *Snohomish County Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc.*, 173 Wn.2d 829, 834, 271 P.3d 850 (2012). The parties present no extrinsic evidence concerning the negotiations leading to or the drafting of the management agreement. At oral argument, neither party identified any issue of fact requiring a remand to the trial court. Wash. Court of Appeals oral argument, *supra*, at 15 min., sec. 5; 23 min., 35 sec.; 24 min., 50 sec.

We now move to the obligatory recitation of principles of contract construction. Unless the contract violates public policy, parties may enter into a contract where one party agrees to indemnify another party for loss, including claims and losses resulting from the latter's negligence. *Snohomish County Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc.*, 173 Wn.2d at 835. Indemnification agreements are interpreted in

the same manner as other contracts. *Id.* Words in a contract are given their ordinary meaning. *Cambridge Townhomes, LLC v. Pac. Star Roofing, Inc.*, 166 Wn.2d 475, 487, 209 P.3d 863 (2009). Courts do not adopt a contract interpretation that renders terms ineffective or meaningless. *Id.*

While indemnity agreements are generally permissible, a contract of indemnity will not be construed to indemnify the indemnitee against the loss resulting from his own negligence unless this intention is expressed in clear and unequivocal terms. *Snohomish County*, 173 Wn.2d at 836; *Jones v. Strom Constr. Co.*, 84 Wn.2d 518, 520, 527 P.2d 1115 (1974). Agreements that purport to exculpate an indemnitee from liability from losses flowing solely from his own acts or omissions are not favored and to be clearly drawn and strictly construed, with any doubts therein to be settled in favor of the indemnitor. *Snohomish County*, 173 Wn.2d at 836. "What is required is language unquestionably showing the parties' intent to indemnify in the event of losses resulting from the indemnitee's negligence." *Id.* at 836-37.

It is the duty of the court to declare the meaning of what is written, not what was intended to be written. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 504, 115 P.3d 262 (2005); *J.W. Seavey Hop Corp. v. Pollock*, 20 Wn.2d 337, 349, 147 P.2d 310 (1944). We do not seek to ascertain the intention of the bodies independent of the agreement's language. *J.W. Seavey Hop Corp.*, 20 Wn.2d at 349. Subjective intent of

11

the parties is generally irrelevant if the intent of the parties can be determined from the actual words used. *Hearst Commc'ns, Inc.*, 154 Wn.2d at 504. And one final critical principle: a contract can be enforced only against a party to it. *State v. Antoine*, 82 Wn.2d 440, 444, 511 P.2d 1351 (1973), *rev'd on other grounds sub nom. Antoine v. Washington*, 420 U.S. 194, 95 S. Ct. 944, 43 L. Ed. 2d 129 (1975); *McIntyre v. Johnson*, 66 Wash. 567, 570, 120 P. 92 (1912).

We must determine if the management agreement between HSC and VMSI affords HSC limited indemnification under the circumstances when HSC and VMSI are sued for HSC's negligence. We read and reread, review and rereview the agreement to answer this question. We repeat the indemnification paragraph with emphasis on pertinent language:

> 11. INDEMNIFICATION OF AGENT: *Except in cases of negligence* or Agent's intentional misconduct, Owner shall release, indemnify, defend and save Agent harmless from all suits, assessments and charges which pertain to the management and operation of the *Project*. The *Project's* duty to indemnify shall include all litigation expenses including reasonable attorney's fees. *Regardless of Agent's conduct*, Agent shall be indemnified to the extent of available insurance coverage.

CP at 62.

We now parse the indemnity clause language. The paragraph employed the word "Project" at the end of the first sentence and the beginning of the second sentence. An opening paragraph defined "Project" as the property: Villas at Meadow Springs. Use of

12

the word in section 11's first sentence is consistent with the agreement's definition, since the word "Project" in this sentence entails the apartment complex as an undertaking, rather than a legal entity. Use of "Project" in the second sentence causes confusion since a duty is generally imposed on a legal entity, not an undertaking. The Villas is not a legal entity. VMSI, LLC, the owner, is a legal entity. We conclude that use of "Project" in the second sentence refers to the owner, since the agreement imposes indemnification obligations on only the owner. The second sentence compliments the first sentence and expands on the duty to indemnify imposed by the first sentence. Thus, the obligor under the second sentence should be the obligor under the first sentence. In addition, the owner owns the "Project" and thus owns the obligation to indemnify.

We disagree with the trial court and hold that the third sentence of section 11 applies under the circumstances on appeal. The trial court's reading of the paragraph renders the last sentence superfluous. If VMSI has no duty to indemnify HSC for its negligence, the phrase "[r]egardless of the Agent's conduct" passes from the agreement. CP at 62. The first and third sentence of the agreement may be read together to recognize a consistent intent of the parties. VMSI has no duty to indemnify HSC for the latter's negligence except to the extent of the availability of insurance coverage. If HSC is sued for the conduct of others, VMSI must indemnify HSC regardless of insurance coverage.

HSC asserts that the trial court erred in interpreting section 11 to mean that HSC's

13

remedies for VMSI's admitted failure to indemnify HSC are limited to pursuing VMSI's insurer. We do not read the record as establishing that VMSI admitted to a duty to indemnify and a corresponding failure to indemnify. Nor does the record reflect a ruling by the trial court that VMSI has no duty to indemnify since HSC may pursue a claim against VMSI's insurer. Nevertheless, we would disagree with such a reading of the agreement or ruling by the lower court. The management agreement is a contract between VMSI and HSC and creates no rights against third parties, such as an insurer of one of the parties. If HSC holds rights against Fireman's, those rights must arise from some other document. Nothing in the management agreement suggests that HSC has a direct cause of action against an insurer nor does any language limit HSC's remedy to an insurer.

The third sentence in section 11 of the management agreement does not identify who holds the obligation to indemnify HSC to the extent of insurance coverage. But the obligation could only be imposed on VMSI, since it is the only other party to the agreement. Imposing that obligation on a third party, such as an insurer, is unreasonable, since the third party is not bound by the management agreement. Stated conversely, such a reading is reasonable only if the insurer procured by VMSI signed and agreed to be bound by the management agreement. To repeat, a contract can be enforced only against a party to it. *State v. Antoine*, 82 Wn.2d at 444; *McIntyre v. Johnson*, 66 Wash. at 570.

14

HSC also contends that the trial court erred in concluding that HSC has no damages because its own insurer defended it against Dana Widrig's claims. The record reflects no such ruling by the trial court. Assuming any such ruling, we disagree. The second sentence of the indemnity clause expressly provides that the duty to indemnify shall include litigation expenses and reasonable attorney fees. It is undisputed that neither VMSI nor its insurer paid HSC's litigation expenses or attorney fees. HSC's procurement of liability insurance to cover claims against it does not void VMSI's duty of indemnification. HSC's procurement of alternative coverage is merely a wise decision to maintain several layers of protection.

While HSC did not pay to settle Dana Widrig's claims, this fact does not absolve VMSI of its contractual duty under section 11 to indemnify HSC against the expense of litigation, including attorney fees. The duty to pay for litigation expenses is independent of any obligation to pay the third party's claim. *Edmonson v. Popchoi*, 155 Wn. App. 376, 386, 228 P.3d 780 (2010), *aff'd*, 172 Wn.2d 272, 256 P.3d 1223 (2011).

Many contracts include a paragraph that states each party waives its right to indemnification from the other party to the extent of insurance coverage. The management agreement between HSC and VMSI contains no such paragraph. Nevertheless, our reading of section 11 is consistent with such a standard paragraph, because the indirect consequences of this reading lead to this end. VMSI is not obligated

to defend HSC beyond available insurance limits and we suspect that any payment by VMSI to HSC will be reimbursed to VMSI by its insurer.

We recognize that indemnity agreements are strictly construed against the indemnitee if the agreement appears to indemnify the indemnitee from its own wrongdoings. We find no ambiguity in the language, however. The phrase "regardless of Agent's conduct" in the third sentence clearly imposes the limited duty to indemnify even in instances of HSC's negligence. Our reading is also consistent with the first sentence in section 11, wherein only VMSI assumes an obligation to indemnify.

We recognize that the parties or the person drafting the management agreement might have intended the interpretation placed on the indemnity clause by VMSI and the trial court—that the purpose of the last sentence in the clause is merely to prevent Fireman's from claiming its liability insurance policy does not cover HSC rather than the clause imposing an independent duty on VMSI. Nevertheless, VMSI presents no evidence of discussions leading to the drafting of the agreement that support such a reading. The drafter is not identified let alone has the drafter explained the intended purpose of the last sentence in section 11. We are bound by the language of the agreement, not the unstated and unsubstantiated intent of the parties or the agreement's drafter. To repeat, our duty is to declare the meaning of what is written, not what was intended to be written. *Hearst Commc'ns, Inc.*, 154 Wn.2d at 504.

If VMSI did not wish to assume the duty imposed in the third sentence, it could have substituted as the third sentence: "despite claims of negligence being exempted from the owner's duty to indemnify, an insurance company may not avoid its duty to defend HSC and pay claims based upon negligence of Agent." In the alternative, the sentence could have read: "Regardless of the Agent's conduct, Agent shall be indemnified by Owner's liability insurance company to the extent of available insurance coverage."

Our dissenting brother notes that the management agreement is printed on HSC stationery and concludes that HSC must have drafted the agreement. Nevertheless, neither party can identify the drafter of the agreement. HSC astutely noted, during oral argument, that, in this age of computers and e-mail, parties can mutually engage in drafting an agreement, while the agreement is later printed on only one party's stationery.

*ISSUE 2: Should attorney fees and costs be awarded HSC against VMSI under the parties' management agreement?*

*ANSWER 2: Yes.*

HSC argues on various grounds that the trial court erred in awarding VMSI attorney fees and costs incurred in defending its cross claim. HSC argues, for instance, that Fireman's is the real party in interest and an insurance company may not subrogate against one of its insureds. We reverse the award on another ground: VMSI is not the prevailing party. We instead award HSC its attorney fees and costs incurred at the trial

17

court level for pursuing its cross claim of indemnification, in addition to reasonable attorney fees and costs incurred in defending Dana Widrig's claim.

Section 20 of the management agreement provides that the prevailing party is entitled to reasonable attorney fees. A prevailing party or substantially prevailing party is one that receives judgment in its favor at the conclusion of the entire case. *Harmony at Madrona Park Owners Ass'n v. Madison Harmony Dev., Inc.*, 160 Wn. App. 728, 739-40, 253 P.3d 101 (2011). That party is HSC.

Both parties seek a recovery of attorney fees and costs on appeal. Reasonable attorney fees incurred on appeal are recoverable if allowed by statute, rule, or contract and the request is made pursuant to RAP 18.1(a). HSC made such a request. We grant reasonable attorney fees and costs to HSC for this appeal.

CONCLUSION

Under the third sentence in paragraph 11 of the management agreement, VMSI must pay HSC's attorney fees and expenses incurred to defend Dana Widrig's lawsuit, as a matter of law, to the extent of available insurance coverage. We reverse the summary judgment ruling in favor of VMSI and grant HSC summary judgment on its cross claim for indemnity. We vacate the judgment against HSC and in favor of VMSI for attorney fees and costs. We award HSC reasonable attorney fees and costs incurred in defending the claim asserted by Dana Widrig and for pursuing its cross claim against VMSI. We

18

remand to the trial court to determine the extent of available coverage and thus the outer bound of VMSI's duty to indemnify for the defense of the Widrig claim.

We also remand to the trial court to determine a reasonable sum of attorney fees and costs incurred by HSC in defending the Widrig claim and prosecuting the cross claim, including fees and costs incurred on appeal. The amount of the attorney fees and costs award for prosecuting the cross claim shall not be limited by the amount of available insurance nor taken into consideration when determining the amount of insurance available.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

I CONCUR:

_____
Siddoway, C.J.

31687-4-III; 32122-3-III

LAWRENCE-BERREY, J. (dissenting) — Paragraph 15 of the management agreement prohibits construing the agreement in favor of one party or the other. Because the majority construes the ambiguity in the indemnification paragraph in favor of HSC, the party which created the ambiguity, I dissent.

The majority acknowledges the simple fact that the management agreement was written on HSC Real Estate, Inc., letterhead. Clerk's Papers (CP) at 59. Although the parties are unable to identify the scrivener of their agreement, there can be little or no doubt that the scrivener was an HSC employee or agent.

Paragraph 10 of the management agreement requires the owner, VMSI, LLC, to purchase an insurance policy to insure against claims arising out of the project. That paragraph also requires VMSI to name HSC as an additional insured under such policy.

The next paragraph, paragraph 11, requires VMSI to indemnify HSC against claims arising out of the project, except in cases of HSC's negligence or intentional conduct. The final sentence of paragraph 11 uses the passive voice. It provides: "*Regardless of [HSC's] conduct, [HSC] shall be indemnified to the extent of available insurance coverage.*" CP at 62.

This panel has read and reread the above italicized sentence in an attempt to construe the ambiguity created by the scrivener's use of the passive voice. The majority resolves this ambiguity by construing the last sentence to mean: "Regardless of HSC's conduct, *VMSI* shall indemnify HSC to the extent of available insurance coverage." I dissent because this ambiguity can just as easily be resolved by construing the last sentence to mean: "Regardless of HSC's conduct, *the insurer* shall indemnify HSC to the extent of available insurance coverage."

The majority notes that a promise to indemnify for losses caused by another's negligence must be clear and unequivocal. There is no question that the final sentence of paragraph 11 creates an obligation to indemnify HSC for HSC's own negligence. Where we part is *what entity* has the obligation to indemnify HSC for HSC's own negligence.

The majority reasons that because the management agreement is between two parties, the obligation to indemnify HSC for its own negligence must be that of the other party, i.e., VMSI. The problem with the majority's reasoning is that the first sentence of paragraph 11 explicitly states that VMSI has no obligation to indemnify HSC for HSC's own negligence. Therefore, when HSC tendered its defense to VMSI of Ms. Widrig's negligent management claim, VMSI was well within its contractual right to refuse the tender. Had HSC instead tendered its defense to Fireman's Fund, Fireman's Fund would have been obligated to assume the defense of its additional insured "to the extent of available insurance coverage."

2

Had HSC simply tendered its defense to its insurer, Fireman's Fund, the litigation of HSC's cross claim would have been unnecessary. Instead, HSC would have fully realized on its contractual right to be indemnified to the extent of available insurance. HSC created its own cross claim by neglecting its contractual right as an additional insured. Without doubt, HSC failed to reasonably mitigate its damages when it neglected to tender its defense to Fireman's Fund, its insurer.

The majority construes HSC's ambiguous language in favor of HSC. The majority construes the final sentence of paragraph 11 in a manner that contradicts the first sentence of that paragraph. HSC created this inconsistency by poorly drafting the provision. HSC then compounded the problem it created by failing to tender the defense of its alleged negligence to its insurer, Fireman's Fund. For each and all of these reasons, I respectfully dissent.

Lawrence-Berrey, J.