# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| AMOS TSIKAYI and CHRIS TSIKAYI, | No. 56753-9-II |
| Respondents, | |
| v. | |
| CHRISTOPHER PAT KRAKE and LESLIE JEANNE KRAKE, | UNPUBLISHED OPINION |
| Appellants. | |

PRICE, J. — Christopher and Leslie Krake (Krakes) and Amos and Chris Tsikayi (Tsikayis) are neighbors in the Summer Hill neighborhood. The Krakes appeal the superior court's order awarding attorney fees to the Tsikayis after the dismissal without prejudice of the Krakes' counterclaim in a lawsuit between them. The Krakes argue the superior court erred because no attorney fees provision applies to their counterclaim. They further argue the dismissal of the counterclaim without prejudice is not a final judgment. We affirm the superior court.

## FACTS

### I. BACKGROUND FACTS

There is a line of Leyland Cypress trees near the boundary between the Tsikayis and the Krakes. Due to their placement and height, the trees allegedly blocked the Krakes' view of sunsets and downtown Portland and shielded natural light from the home. Since the trees were almost

entirely on the Tsikayis' property, the Krakes asked their neighbors to trim their tops. When the Tsikayis did not trim the trees, this dispute began.

A.  HOA GOVERNING PROVISIONS.

Both neighbors are members of the Summer Hills Homeowners Association (HOA). The HOA is governed by the Declaration of Mitigation Covenants, Conditions, and Restrictions for Summer Hills (CCRs). As part of the landscaping plan and external improvement provisions incorporated in the CCRs, the HOA also enacted numerous requirements through a document called the Architectural Controls and Guidelines (ACGs). The HOA bylaws also provide for an Architectural Review Committee (ARC), which is tasked with homeowner education and enforcement of the ACGs.

In the event of a dispute between neighbors regarding these requirements, the ACGs impose a process for resolving the dispute. The process starts when an owner makes a complaint to the ARC. The ARC will review any plans on file, visually inspect the site, and collect any relevant data. If the ARC determines there is no violation, the complaint will be closed, and the complainant notified of the decision. If a violation is found, the ARC will contact the offending owner and request compliance. If the owner fails to comply, the ARC or a management company will send a fourteen-day letter requesting immediate compliance and may request a hearing with the HOA Board of Directors (Board).

If any owner disagrees with the ARC's determination, the owner may timely appeal the decision to the Board. To be timely, the appeal must be submitted within two months of the decision. A violating owner who appeals the ARC decision and chooses to hire an attorney may

No. 56753-9-II

risk paying the HOA's attorney fees if they lose before the Board. Referring back to the CCRs, the ACGs give this notification to owners as follows:

> When an owner, who is found in violation by the ARC, appeals the ARC decision to the Board and chooses to retain an attorney to present their appeal, the [HOA] may retain an attorney (as has been the practice) and may engage a court reporter to record the hearing. This is done to protect the [HOA] in the event an owner files a lawsuit thereafter. If the Board, after hearing the appeal, rules against the owner, then the Board may charge the owner for reasonable attorney fees and costs incurred by the [HOA] per Article X Section 3 of the [CCRs].

Clerk's Papers (CP) at 729-30.

Following a decision from the Board, if either the HOA or the owner still do not agree with the decision, the parties are required to engage in good-faith mediation prior to filing a lawsuit.

The CCRs' attorney fees provision in Article X, section 3, referenced in the ACGs, states that "violators" shall be responsible for costs and fees:

> The [HOA] or any Owner shall have the right to enforce by proceeding at law or in equity all restrictions, conditions, covenants, reservations, liens and charges now or hereafter imposed by the provisions of this Declaration . . . . The *violators* shall be responsible for all costs incurred in enforcing this Declaration . . . including reasonable attorney's fees, whether or not litigation is commenced, and if so, during any arbitration, trial or appeal, or in any proceeding in federal bankruptcy court or under state receivership or insolvency statutes. The [HOA] may add any such cost due it to the current or next annual assessment of the offending Owners. Whenever the [HOA] anticipates incurring attorney fees or costs to enforce any of its governing provisions, the [HOA] shall notify any Owner involved, giving that Owner notice that the Owner may be responsible for reasonable attorney fees and costs whether or not litigation is commenced. Prior to filing any lawsuit, all Owners and/or the [HOA] will be required to participate in and complete formal Mediation in a good faith effort to resolve the dispute before filing a lawsuit. The parties will agree upon and share equally in the Mediation cost as a condition required before filing any lawsuit.

CP at 565 (emphasis added).

Among the provisions of the CCRs is a view blockage restriction in Article IV, which requires members to trim or remove vegetation that blocks a neighbor's view.

3

B. NEIGHBOR DISPUTE.

In 2015, the Krakes asked the Tsikayis to trim the tops of the several Leyland Cyprus trees on the Tsikayis' property so that the trees would not block the Krakes' view. In an effort to resolve the issue, the Krakes requested that the ARC review whether the Tsikayis' trees were impacting their view in violation of the CCRs. The ARC issued a determination that the Tsikayis' trees did not violate the view blockage restriction. The Krakes did not appeal this decision to the Board in accordance with the required process.

In 2016, the Krakes believed the Tsikayis' trees had encroached over the boundary line and onto their property. Apparently believing either they had permission from the Tsikayis or permission was not needed because the trees had grown onto their property, the Krakes hired a contractor, who trimmed the tops of the Tsikayis' trees.

II. RESULTING LITIGATION

A. TSIKAYIS' LAWSUIT AND KRAKES' COUNTERCLAIM

In 2017, the Tsikayis filed a complaint against the Krakes for timber trespass for trimming the trees without permission and sought a permanent injunction to prohibit the Krakes from trespassing on the Tsikayi property or cutting the trees.[1] The Krakes responded with two counterclaims. The first counterclaim sought damages for the Tsikayis' breach of the HOA

---

[1] Whether or not the Krakes had, or needed, permission from the Tsikayis to trim the trees is still disputed.

restrictions for the trees and an injunction to require the Tsikayis maintain the height of the trees at less than 24 feet.[2]  The first counterclaim referenced the ARC's 2015 decision, alleging,

> It was not until August 2015 that plaintiffs objected to cutting the trees and, in bad faith, encouraged the ARC to find that their trees did not impact defendants' view. The ARC did not consider the impact on light for the defendants . . . .
> . . . .
>
> Plaintiffs['] bad[-]faith involvement with the ARC, which elevated defendants['] view rights without regard to the CCRs and beyond the limit of their authority in addressing non-native trees, has demonstrated that the HOA won't enforce defendants['] to [sic] view easement rights and to be free from light obstruction. Plaintiffs['] previous refusal to pay for the agreed cutting is likely to continue without injunctive relief.

CP at 29-30.

B.  MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND PARTIAL FINAL JUDGMENT

The litigation progressed over the course of several years.  In 2019, following extensive discovery, the Tsikayis moved for partial summary judgment to dismiss the Krakes' first counterclaim.  The Tsikayis alleged that the Krakes could not challenge the ARC's 2015 decision about the trees because they failed to adhere to the appeals process mandated by the CCRs and ACGs.

The superior court agreed with the Tsikayis.  In its March 2019 "Ruling and Order on Plaintiffs' Motion for Partial Summary Judgment on Liability," the superior court granted the Tsikayis' partial summary judgment motion specific to the Krakes' first counterclaim.  The ruling stated the Krakes were "precluded from enforcing any HOA restrictions for failure to exhaust their

---

[2] The Krakes' second counterclaim related to alleged trespass for the trees' growth and a play structure on the Krakes' property; the second counterclaim remains disputed and is not relevant to this appeal.

contractual remedies . . . ." CP at 394. The Krakes filed a motion for reconsideration, which the superior court denied. The Krakes did not attempt to seek review of the decision.

Several months later, pursuant to CR 54(b), the Tsikayis moved for entry of partial final judgment based on the March 2019 ruling, seeking a dismissal of the Krakes' counterclaim with prejudice so potential evidentiary issues would not affect the upcoming trial. The Krakes objected, arguing the March partial summary judgment ruling was not a final judgment. The Krakes contended the superior court's ruling failed to include an express direction for entry of judgment and, if anything, their counterclaim should be dismissed *without* prejudice since the ruling was based on a failure to follow the appeals process and was not a decision on the merits. The Krakes also objected to any entitlement of attorney fees, as the judgment was not final.

The superior court denied the Tsikayis' motion for entry of the judgment, stating a desire to avoid multiple appeals and preserve judicial resources. The superior court also explained there were other avenues available for the Tsikayis to prevent introduction of certain evidence at an upcoming trial.

The trial was delayed for more than two years. Then, in October 2021, as the rescheduled trial date neared, the Krakes sought further delay of the trial. In response to the potential continuance, the Tsikayis moved again for entry of partial final judgment on the Krakes' first counterclaim. The Tsikayis explained that their motion was not as premature as it may have been two years prior and they were entitled to attorney fees for the counterclaim and the work preparing for trial. The Tsikayis did not submit a proposed order with their motion.

The Krakes conceded that the superior court had previously dismissed their first counterclaim with its March 2019 ruling, but they objected to the superior court granting attorney

fees until the Tsikayis submitted a proposed order to which the Krakes would have an opportunity to respond.

Soon thereafter, the Tsikayis submitted their proposed order. The original language of the proposed order provided, "There being no just reason for delay," a "final partial judgment" should be entered in favor of the Tsikayis on the Krakes' first counterclaim. CP at 529. The proposed order further entitled the Tsikayis to an award of reasonable attorney fees, stating,

> [The Tsikayis] are the prevailing parties as to defendants' first counterclaim and . . . thus are entitled to costs and disbursements as determined by the Court, and an award of reasonable attorneys' fees on [the Krakes'] first counterclaim.

CP at 529.

The Krakes objected to the language of the proposed order. The Krakes asserted that (1) the judgment was not appropriately a final appealable judgment and, in any event, the language of the order was insufficient to certify the judgment being appealable under CR 54(b), (2) the order should specify their counterclaim was dismissed *without* prejudice because it was decided on a failure to exhaust, not on the merits, and (3) an award of attorney fees was improper and premature because the Tsikayis had not submitted a motion for attorney fees under CR 54(d)(2).

The Tsikayis responded, in part, by contending that the dismissal of the Krakes' first counterclaim should be *with* prejudice because, even though it was decided on the failure to exhaust the dispute resolution process of the CCRs, the deadline for using that process had long since expired.

The superior court amended the proposed order, going through the language "item-by-item" and making changes "based on the parties' argument[s]." VRP at 121. The superior court amended the order in response to the Krakes' complaint about attorney fees. Whereas the language

previously stated the Tsikayis were entitled to attorney fees, the edited language merely stated they were "entitled to submit a motion" for attorney fees. CP at 529.

The superior court further agreed with the Krakes to edit the language of the order to specify the first counterclaim was "dismissed without prejudice," apparently agreeing with Krakes that the phrase was more accurate because the counterclaim was not dismissed on the merits. CP at 529. The superior court left the language about there being "no just reason for delay . . . ." CP at 529.

The superior court entered its order entitled, in part, "Partial Final Judgment" on October 22, 2021. CP 528. The edited findings of the order read as follows:

> 2. The Court's Summary Judgment Order represents a final adjudication of defendants' first . . . counterclaim[].
>
> 3. [The Krakes'] first . . . counterclaim[] [is] not related and stem[s] from separate and distinct facts as [the Tsikayis'] claims against [the Krakes], and any immediate appeal of the issues in the Summary Judgment Order as to [the Krakes'] counterclaim[] will not prevent the existing litigation from going forward.
>
> 4. There being no just reason for delay, this final partial judgment shall be entered without further delay because defendants' counterclaim[] [is] now fully resolved.
>
> 5. [The Tsikayis] are the prevailing parties as to defendants' first counterclaim and . . . thus are entitled *to submit a motion* for costs and disbursements as determined by the Court, and an award of reasonable attorneys' fees on [the Krakes'] first counterclaim.

CP at 529.

The final language of the order read:

> 1. Judgment in favor of [the Tsikayis] as to [the Krakes'] first counterclaim . . . . The first counterclaim is dismissed *without prejudice*. . . .
>
> 2. [The Tsikayis] shall be entitled to seek costs and disbursements as determined by the Court, and an award of reasonable attorneys' fees *upon motion* on [the Krakes] first counterclaim to be determined pursuant to CR 54(d)(2).

8

CP at 529 (emphasis added).

C. Tsikayis' Motion and Award of Attorney Fees

In December 2021, the Tsikayis filed a separate motion requesting judgment and a specific amount of attorney fees. The Tsikayis contended that Article X of the CCRs contained a unliteral attorney fees provision that should apply to them by operation of RCW 4.84.330, which makes unilateral fee provisions bilateral. The Tsikayis also argued that the dismissal of the Krakes' first counterclaim, even though it was labeled "without prejudice," was actually a final judgment because it disposed entirely of the issues in that counterclaim. CP at 645. They reasoned that because the Krakes failed to appeal the 2015 ARC decision within the time period required by the CCRs, the judgment was final. The Tsikayis requested over $85,000 in attorney fees.

The Krakes objected, arguing to the superior court that the CCRs did not provide the Tsikayis with attorney fees in the context of the counterclaim. According to the Krakes, the CCRs' use of the term "violator" in the Article X attorney fees provision was dispositive. CP at 798. The Krakes argued that a violator in this sense is someone who was determined to have violated the CCRs, which did not occur here. The Krakes also contended the attorney fees provision did not apply to actions between two owners because the language of the ACGs (notifying owners the HOA may charge owners for its incurred fees) limited attorney fees for actions between the HOA and an owner only. The Krakes further argued fees were only awardable for a final judgment and a dismissal without prejudice was not a final judgment. Finally, the Krakes asserted the amount of the requested fees was unreasonable.

The superior court granted the Tsikayis' motion, awarding them attorney fees in the amount of over $55,000. The superior court concluded that Article X "applie[d] to lawsuits between

individual owners," and, therefore, RCW 4.84.330 applied to provide fees to owners who prevailed in those lawsuits. CP at 784. It determined the Tsikayis were the prevailing party as to the Krakes' first counterclaim, and the dismissal without prejudice was a final judgment since the Krakes' "administrative remedies ha[d] expired." CP at 784. The final "Order Granting Plaintiffs' Motion for Attorney Fees and Judgment" (February 2022 final order) was filed on February 11, 2022. CP at 781.

The Krakes sought discretionary review of this February 2022 final order granting attorney fees.[3] This court determined the matter was appealable as a matter of right. Perfection Letter, *Tsikayi v. Krake*, No. 56753-9-II (Mar. 21, 2022).

## ANALYSIS

### I. REVIEW OF ATTORNEY FEES ORDER UNDER RAP 2.4

As an initial matter, the Tsikayis argue that we must dismiss the Krakes' appeal because they appealed the wrong order. The Tsikayis contend the Krakes should have appealed the October 2021 underlying Partial Final Judgment order entitling the Tsikayis to attorney fees, not the February 2022 final order, which only determined the amount of the attorney fees. In support of their argument, the Tsikayis refer to RAP 2.4 and other authorities that provide, "[A]n appeal from an attorney fee decision does not bring up for review a separate judgment on the merits unless a timely notice of appeal is filed from that judgment." *Bushong v. Wilsbach,* 151 Wn. App. 373, 377, 213 P.3d 42 (2009); *Carrara, LLC v. Ron & E Enters., Inc.*, 137 Wn. App. 822, 825-26, 155 P.3d 161 (2007); RAP 2.4(b). We disagree.

---

[3] The Krakes do not seek review of the amount of attorney fees awarded.

Here, the October 2021 Partial Final Judgment stopped short of actually awarding fees to the Tsikayis. In fact, during the October hearing on the judgment, the superior court edited the findings in response to the Krakes' objections to doing just that. The Tsikayis proposed language that initially stated the Tsikayis, as prevailing parties, were "entitled to costs and disbursements as determined by the Court." CP at 529. But following objection from the Krakes, the superior court edited the language to say only that the Tsikayis were "entitled to *submit a motion for* costs and disbursements as determined by the Court." CP at 529 (emphasis added). Another portion of the order merely stated the Tsikayis "shall be entitled to seek costs and disbursements as determined by the Court, and an award of reasonable attorneys' fees . . . ." CP at 529. Because the October 2021 Partial Final Judgment only entitled the Tsikayis to "seek" fees, the Krakes were entitled to appeal both the legal basis and amount of the attorney fees by requesting review of the superior court's February 2022 Order Granting Plaintiffs' Motion for Attorney Fees and Judgment.

## II. ATTORNEY FEES UNDER THE CCRS

The Krakes contend the superior court erred in granting the Tsikayis' attorney fees with two principal arguments. First, the Krakes argue the attorney fees provision in the CCRs (Article X) did not apply to their first counterclaim because the provision is limited to an award when someone is found to be a "violator" and does not apply unless and until the ARC or Board determines there was a violation. Second, the Krakes argue that an award of attorney fees requires a final judgment and because the dismissal of their first counterclaim was without prejudice, it was not a final judgment. We disagree with both arguments.

11

A. LEGAL PRINCIPLES

1. CCRs Interpretation

We apply the rules of contract interpretation to restrictive covenants. *Wilkinson v. Chiwawa Cmtys. Ass'n*, 180 Wn.2d 241, 249, 327 P.3d 614 (2014). Our main objective when "interpreting a restrictive covenant is to determine the covenant drafter's intent by examining the clear and unambiguous language of the covenant." *Saunders v. Meyers*, 175 Wn. App. 427, 438-39, 306 P.3d 978 (2013). The goal is to determine and give effect to the intended purposes of the covenants. *Riss v. Angel*, 131 Wn.2d 612, 623, 934 P.2d 669 (1997). A contract interpretation that gives effect to all provisions is favored over one that renders a provision ineffective. *Snohomish County Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc.*, 173 Wn.2d 829, 840, 271 P.3d 850 (2012). "And '[w]here one construction would make a contract unreasonable, and another, equally consistent with its language, would make it reasonable, the latter more rational construction must prevail.' " *Kiona Park Ests. v. Dehls,* 18 Wn. App. 2d 328, 335, 491 P.3d 247 (2021) (alteration in original) (quoting *Byrne v. Ackerlund*, 108 Wn.2d 445, 453-54, 739 P.2d 1138 (1987)).

We give language " 'its ordinary and common use' " and may not construe the language in a way that " 'defeat[s] its plain and obvious meaning.' " *Wilkinson*, 180 Wn.2d at 250 (quoting *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 816, 854 P.2d 1072 (1993)). "[I]f more than one reasonable interpretation of the covenants is possible regarding an issue, we must favor that interpretation which avoids frustrating the reasonable expectations of those affected by the covenants' provisions." *Green v. Normandy Park Riviera Section Cmty., Inc.*, 137 Wn. App. 665, 683, 151 P.3d 1038 (2007), *review denied*, 163 Wn.2d 1003 (2008). We must

give " 'special emphasis' " to the interpretation that protects the owners' collective interests. *Riss*, 131 Wn.2d at 621 (quoting *Lakes at Mercer Island Homeowners Ass'n v. Witrak*, 61 Wn. App. 177, 181, 810 P.2d 27 (1991)).

2. Unilateral Fees Provisions Made Bilateral Pursuant to RCW 4.84.330

Attorney fees may be awarded if authorized by a contract, statute, or a recognized ground in equity. *Bowles v. Dep't of Ret. Sys.*, 121 Wn.2d 52, 70, 847 P.2d 440 (1993). We conduct a de novo review to determine whether there is a legal basis for awarding or denying attorney fees under a contract, statute, or ground in equity. *Falcon Props. LLC v. Bowfits 1308 LLC*, 16 Wn. App. 2d 1, 11, 478 P.3d 134 (2020).

Unilateral attorney fees provisions can be made bilateral by operation of law through RCW 4.84.330. Attorney fees may be awarded to the prevailing party in an action on a contract regardless of whether the prevailing party is the party specified in the contract:

> In any action on a contract or lease . . . where such contract or lease specifically provides that attorneys' fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he or she is the party specified in the contract or lease or not, shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements.

RCW 4.84.330. This statute helps ensure parties will not be deterred from choosing to bring a claim for fear of triggering the provision. *Wachovia SBA Lending, Inc. v. Kraft,* 165 Wn.2d 481, 489, 200 P.3d 683 (2009).

RCW 4.84.330 defines a "prevailing party" as "the party in whose favor final judgment is rendered." Generally, a prevailing party is the party who received "an affirmative judgment in its favor" or the party who "substantially" prevailed based on "the extent of the relief afforded [to] the parties." *McLelland v. Paxton*, 11 Wn. App. 2d 181, 222-23, 453 P.3d 1 (2019). A party who

successfully defends a claim may be a prevailing party. *Hawkins v. Diel*, 166 Wn. App. 1, 10, 269 P.3d 1049 (2011).

A final judgment necessary for the award of fees is "[a] court's last action that settles the rights of the parties and disposes of all issues in controversy." *Wachovia*, 165 Wn.2d at 492 (alterations in original) (quoting BLACK'S LAW DICTIONARY 859 (8th ed. 2004)). A final judgment is one that "resolve[s] the merits of a party's legal claims." *Denney v. City of Richland*, 195 Wn.2d 649, 654, 462 P.3d 842 (2020). "A ruling that is not appealable is not a final judgment." *In re the Ests. of Jones*, 170 Wn. App. 594, 605, 287 P.3d 610 (2012); *see* RAP 2.2(a).

A dismissal *without prejudice* may still be a final judgment. *Munden v. Hazelrigg*, 105 Wn.2d 39, 40-41, 711 P.2d 295 (1985). A dismissal with prejudice precludes subsequent actions based on the same claims, while a dismissal without prejudice typically does not. *See Rose v. Fritz*, 104 Wn. App. 116, 121, 15 P.3d 1062 (2001). But both kinds of dismissals may entirely dispose of the present action. *Id.* For example, "a dismissal without prejudice may be appealable, pursuant to RAP 2.2(a)(3), where its effect is to determine the action and prevent a final judgment or discontinue the action." *Munden*, 105 Wn.2d at 40-41. And when a statute of limitations bars refiling of a case, the action is effectively discontinued "whether [the] claim was dismissed with or without prejudice." *Tjart v. Smith Barney, Inc.*, 107 Wn. App. 885, 893, 28 P.3d 823 (2001), *review denied,* 145 Wn.2d 1027; *cert. denied*, 537 U.S. 954 (2002); *see also Wachovia*, 165 Wn.2d at 487.

But if there is no bar to a subsequent suit or the effect of the dismissal is not to determine or discontinue the action, the dismissal is not appealable and, therefore, not a final judgment. *Munden*, 105 Wn.2d at 41. A voluntary dismissal without prejudice, for example, is not a final

judgment under RCW 4.84.330 because it "leaves the parties as if the action had never been brought." *Wachovia*, 165 Wn.2d at 492.

B. APPLICATION

1. CCR Interpretation

The CCRs contain an attorney fees provision. Article X, section 3 allows for attorney fees for owners defending enforcement of the CCRs from other owners. Again, the provision states, in relevant part:

> The [HOA] or *any Owner* shall have *the right to enforce by proceeding at law* or in equity all restrictions, conditions, covenants, reservations, liens and charges now or hereafter imposed by the provisions of this Declaration . . . . The violators shall be responsible *for all costs incurred in enforcing this Declaration . . .* including reasonable attorney's fees . . . .

CP at 565 (emphasis added). An "Owner" is defined as "the record Owner of a fee interest, grantors under a deed of trust, and contract purchasers who are in possession of a Lot." CP at 551 (Article I, section 9). Violator is not defined in the CCRs; thus, we may look to its ordinary and common use. "Violate" is defined as "to fail to keep: break, disregard," and a "violation" is "an infringement or transgression." WEBSTER'S THIRD NEW INT'L DICTIONARY OF THE ENGLISH LANGUAGE 2554 (2002). And a "violator" is "one that commits a violation." *Id.*

As noted above, the ACGs also mention attorney fees in the context of a dispute with the HOA. While outlining the dispute process, the ACGs provide that the HOA may charge back the fees it incurs when an owner hires an attorney to challenge an action to the Board.

Here, the Krakes argue the attorney fees provision in Article X should not apply to their dispute with the Tsikayis. The Krakes contend it is not a standard attorney fees provision because it does not award fees to the prevailing party, but instead specifies only "violators" must pay.

Coupling this "violator" reference with the ACGs' discussion of fees in the context of a dispute with the HOA, the Krakes reason the drafters' intent was to limit the class of persons who must pay attorney fees, specifically only "violators" in situations where a "violation" has been determined by the HOA or ARC. Because the HOA or ARC never found a violation in this case, the Krakes argue the attorney fees provision cannot be triggered regardless of the operation of RCW 4.84.330.

The crux of the Krakes' argument is their focus on the language of the appeals process outlined in the ACGs. While any owner may appeal any adverse ARC decision against them, the language in the ACGs does not state all owners who appeal may be required to pay attorney fees. Instead, the language is very specific—only those owners who have found to be in violation of the CCRs may be required to pay for attorney fees. Br. of Appellant 14-18 (citing CP at 729-30 (ACGs) ("When an owner, who is found in violation by the ARC, appeals the ARC decision . . . then the Board may charge the owner for reasonable attorney fees and costs incurred by the [HOA] per Article X Section 3 of the [CCRs].")). The Krakes reason the drafters intended to "distinguish between the two classes of homeowners" because the ACGs do not include language that applies the attorney fees provision for owners who are not found in violation of the CCRs, like the Tsikayis. Br. of Appellant at 14. Therefore, given this distinction, the attorney fees provision is only meant to apply to violating owners because if the drafters had intended for the provision to apply to non-violating owners, they would have included similar language in the ACGs to so reflect. In sum, according to the Krakes, the attorney fees provisions do not "apply to homeowner v. homeowner litigation independent of the [HOA]." Reply Br. of Appellant at 16.

The Krakes' position is unpersuasive. The language of the CCRs' attorney fees provision in Article X is broad. Under Article X, attorney fees may be awarded to the HOA or any owner who successfully enforces the CCRs against one who breaks or disregards the CCRs. An owner can expect to be responsible for attorney fees should they violate the CCRs. Given the "any owner" language in Article X, an owner who successfully enforces the CCRs against another owner in a proceeding at law can expect to be awarded attorney fees from the other owner who has violated the CCRs.

Considering the breadth of Article X, the references to attorney fees in the language used in the ACGs are more reasonably viewed as mere warnings to owners of the potential consequences of challenging the HOA, rather than provisions that limit the reach of Article X to only disputes between owners and the HOA or owners with an adjudicated violation. Indeed, the Krakes' interpretation would lead to unreasonable and arbitrary results. For example, under the Krakes' interpretation, the Tsikayis' could recover attorney fees had the ARC determined the trees violated the CCRs, but because the Tsikayis' properly adhered to the CCRs, they must now pay their own fees. Further, the Krakes' interpretation could potentially lead to an owner bringing multiple harassing claims against a CCR-adhering neighbor without any fear of liability for fees if they lost, so long as the ARC was never involved.

In the end, interpreting the CCRs to provide recovery for homeowner-versus-homeowner litigation encourages compliance and discourages spurious litigation among neighbors, which is consistent with the law's directive to interpret HOA covenants in a manner that supports all the owners' collective interests. *See Riss*, 131 Wn.2d at 623 ("special emphasis" is placed on an interpretation of HOA restrictions that protects the owners' collective interests).

Although Article X imposes liability for fees on an owner found in violation, the provision is silent on what happens when an accused violator successfully defends a suit against them. This clearly makes the provision functionally one-sided and, therefore, unilateral. *See Quality Food Ctrs. v. Mary Jewell T, LLC*, 134 Wn. App. 814, 818, 142 P.3d 206 (2006) (a one-sided attorney fees provision is a unilateral provision under RCW 4.84.330). This is precisely when RCW 4.84.330 steps in and converts the unilateral provision into a bilateral provision that awards fees to the owner who defends themselves from being an accused violator.

We conclude that the Article X attorney fees provision applies to the Krakes' counterclaim. Because the Krakes, as owners in the HOA, brought suit against the Tsikayis, seeking damages and injunctive relief for the trees on the Tsikayis' property that allegedly grew to block the Krakes' view, the Krakes unsuccessfully brought suit to enforce the HOA restrictions. With the operation of RCW 4.84.330 to make the unilateral attorney fees provision of Article X bilateral, the Tsikayis' defense of the Krakes' counterclaim qualifies for an award of attorney fees.

2. Final Judgments and Dismissals Without Prejudice

Even if the CCRs provide an eventual award of fees to the Tsikayis, an award now would still be premature unless the superior court's decision to dismiss the Krakes' first counterclaim is a final judgment. The Tsikayis argue they are entitled to attorney fees now because the dismissal of the Krakes' first counterclaim, even though it was without prejudice, is a final judgment. The Tsikayis contend that the counterclaim was rooted in the 2015 ARC decision and, since the Krakes failed to appeal that decision and no further appeal is possible, those claims are now final.

The Krakes respond that the dismissal of their counterclaim without prejudice is not a final judgment because the counterclaim was not on the merits, was unrelated to the 2015 ARC decision, and sought injunctive relief.

Resolving this question depends on whether the Krakes' first counterclaim was rooted in the 2015 ARC decision. Reviewing the language of this counterclaim, its connection to the 2015 ARC decision is clear. Again, the first counterclaim alleged:

> It was not until August 2015 that plaintiffs objected to cutting the trees and, in bad faith, encouraged the ARC to find that their trees did not impact defendants' view. The ARC did not consider the impact on light for the defendants . . . .
>
> . . . .
>
> Plaintiffs['] bad[-]faith involvement with the ARC, which elevated defendants['] view rights without regard to the CCRs and beyond the limit of their authority in addressing non-native trees, has demonstrated that the HOA won't enforce defendants['] to [sic] view easement rights and to be free from light obstruction. Plaintiffs['] previous refusal to pay for the agreed cutting is likely to continue without injunctive relief.

CP at 29-30.

The Krakes' counterclaim alleges the ARC failed to enforce the CCRs against the Tsikayis after the ARC determined, in 2015, that the trees did not violate the view blockage restriction. The allegations of the counterclaim are clearly tied to that 2015 ARC decision.

This tie to the 2015 ARC decision is dispositive on whether the dismissal is a final judgment because any possible further action on the 2015 decision is barred. The Krakes did not appeal the 2015 ARC decision, nor did they engage in good-faith mediation before filing their counterclaim. Because the ACGs require a specific dispute resolution process for an owner who disagrees with an ARC decision, the Krakes were required to follow that process for the 2015 decision. *See Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 131, 769 P.2d 298

19

(1989) ("Generally, contractual grievance procedures must be exhausted before parties resort to the courts."). And because an appeal must be made within two months of the decision, the Krakes' time for appeal of the 2015 ARC decision has expired.[4] In this sense, something akin to a statute of limitations has run on the first counterclaim. Therefore, the dismissal is final because it discontinues the action.[5] *See Tjart*, 107 Wn. App. at 893 (when statute of limitations barred refiling case, action was effectively discontinued, regardless of whether dismissal of claim was with or without prejudice).

Notwithstanding the superior court's characterization of its dismissal of the Krakes' first counterclaim as being without prejudice, the Tsikayis are entitled to attorney fees because it was a final judgment under RCW 4.84.330.

III. ATTORNEY FEES ON APPEAL

The Tsikayis' seek attorney fees for this appeal under RAP 18.1, the CCRs, and RCW 4.84.330. RAP 18.1(a) allows us to award reasonable attorney fees if an applicable law gives the party the right to recover attorney fees. Article X of the CCRs provides for attorney fees on

---

[4] Moreover, the superior court took this exact view of the Krakes' first counterclaim and its connection to the 2015 ARC decision when it originally explained why it dismissed the counterclaim in its 2019 "Court's Ruling and Order on Plaintiff's Motion for Partial Summary Judgment on Liability" (referring to the counterclaim, the superior court states, "In the instant case the defendants did not exhaust their remedies under the HOA's appeal procedures."). CP at 497. Yet, beyond seeking reconsideration, the Krakes have not attempted to seek review of this order. *See generally Kemmer v. Keiski,* 116 Wn. App. 924, 937, 68 P.3d 1138 (2003) (failure to appeal judgment that leaves nothing unresolved precludes further review); RAP 5.2(a).

[5] Our conclusion that this is a final order is consistent with the superior court's language in its partial final judgment that mirrored CR 54. The superior court's partial final judgment stated, "There being no just reason for delay, this final partial judgment shall be entered without further delay because defendants' counterclaims are now fully resolved." CP at 529.

appeal.[6]  Because this attorney fees provision applies to the Tsikayis as the prevailing party, they are entitled to reasonable attorney fees for this appeal.

CONCLUSION

The Tsikayis are entitled to attorney fees pursuant to the CCRs and RCW 4.84.330 because the partial final judgment dismissing the Krakes' first counterclaim is a final judgment.  We affirm the superior court's award of attorney fees and award the Tsikayis their attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

CRUSER, A.C.J.

LEE, J.

---

[6] Article X, section 3 states, in relevant part, "The violators shall be responsible for all costs incurred in enforcing this Declaration . . . including reasonable attorney's fees, whether or not litigation is commenced, and if so, during any arbitration, trial or *appeal* . . . ." CP at 565 (emphasis added).